# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| **JULIAN REYES,** | § | |
| *Plaintiff* | § | |
| | § | |
| **v.** | § | **Case No. 1:21-CV-00992-DII-SH** |
| | § | |
| **CITY OF AUSTIN, INC.,** | § | |
| *Defendant* | § | |

## ORDER AND REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

**TO:   THE HONORABLE DISTRICT COURT**

Now before the Court are Defendant City of Austin's Motion for Summary Judgment, filed May 1, 2024 (Dkt. 44); Defendant City of Austin's Motion to Strike Plaintiff's Summary Judgment Evidence, filed June 3, 2024 (Dkt. 49); and the associated response, reply, and surreply briefs.[1]

## I.   Background

Plaintiff Julian Reyes, a self-described "videographer, reporter, legal documentarist, and street advocate," brings this civil rights suit against the City of Austin.[2] Dkt. 28 ¶ 1.

### A.  Plaintiff's Allegations

In his Amended Complaint, Reyes makes the following allegations: He "has been repeatedly and wrongly arrested by officers with the Austin Police Department ('APD') while filming APD officers' interactions with unhoused people," in violation of his First Amendment rights to free speech and press. *Id.* ¶ 7. He was "arrested or interfered with" on "at least thirteen occasions"

---

[1] The District Court referred all motions in this case to this Magistrate Judge, pursuant to 28 U.S.C. § 636(b), Federal Rule of Civil Procedure 72, and Rule 1 of Appendix C of the Local Rules of the United States District Court for the Western District of Texas ("Local Rules"). Dkt. 9.

[2] Reyes originally filed this suit *pro se* against APD, five APD officers, an individual, and unnamed parties on November 3, 2021. Dkt. 1. All defendants except the City have been dismissed. Dkt. 14. The Court appointed counsel to represent Reyes on September 16, 2022. Dkt. 19.

between June 2014 and March 2023 without probable cause and as "a pretext to stop Reyes from recording police, to retaliate against him for doing so, and to discourage him from doing so in the future." *Id.* ¶¶ 9, 12. "All, or nearly all, of these arrests were for filming the police while engaged in their duties, not for any violation of the law." *Id.* ¶ 12. By January 2017, "APD had labelled Reyes an 'anti-police activist' based on his exercise of his rights to free speech and the press and repeatedly noted this disparaging label for Reyes in official police reports." *Id.*

Reyes was arrested on November 5, 2019, while he was filming APD officers disrupting a protest in front of the Salvation Army shelter in downtown Austin. *Id.* ¶ 8. The purported reason for his arrest—violating the City's camping ban—was pretextual, and "an APD officer informed him, by words and actions, that Reyes was being arrested for protesting, filming, and advocating for the rights of unhoused people living on the streets of Austin." *Id.* The camping charge was dismissed on the merits. *Id.* ¶ 9.

Reyes was arrested again on October 24, 2021, "while exercising his free speech rights on a public sidewalk." *Id.* ¶ 10. During that arrest, APD officers seized his cameras, which "contained work product and documentary materials that he intended to publish to the public." *Id.* The misdemeanor charge against him was dismissed. *Id.* ¶ 11.

Reyes alleges that his arrests "are the result of a widespread practice or custom in which APD police officers falsely arrest people, or arrest them on pretextual bases, to prevent them from exercising their constitutional right to record police activities." *Id.* ¶ 17. He alleges that his arrests violated his First Amendment right to record police activities, and that the seizure of his cameras, videos, and other materials were unlawful seizures of work product and documentary materials in violation of the Privacy Protection Act of 1980, 42 U.S.C. § 2000aa-6(a). Dkt. 28 ¶¶ 22, 27.

**B.  Defendant's Response**

The City acknowledges that Reyes was arrested ten times between November 5, 2019 and March 8, 2024, but contends that he was arrested each time for violating the law, not because he was videotaping APD officers. Dkt. 44 at 6. The City emphasizes that it has a written policy that "its officers shall not arrest people for or otherwise prevent people from recording police activity." *Id.* at 2 (citing APD General Order 302, Dkt. 44-40 at 8). The City argues that video and documentary evidence "clearly demonstrate officers' compliance with the policy and utterly discredit Reyes' versions of the facts." *Id.*

**C.  Proceedings**

The City moves for summary judgment, arguing that Reyes raises no genuine issue of material fact to show municipal liability under Section 1983 or a violation of the Privacy Protection Act. Reyes responds that he has raised material fact issues as to each element of his claims. The City also moves to strike two exhibits attached to Reyes' response brief.

## II.  Motion to Strike

The City moves to strike a video of Reyes' arrest on January 4, 2019 (Plaintiff's Ex. 13A, Dkt. 47-1 at 253) and deposition testimony from Assistant Chief of Police Eric Miesse (Plaintiff's Ex. 8, Dkt. 47-1 at 92-97). Local Rule CV-7(g) provides:

> The court may refuse to hear or may deny a nondispositive motion unless the movant advises the court within the body of the motion that counsel for the parties have first conferred in a good-faith attempt to resolve the matter by agreement and, further, certifies the specific reason that no agreement could be made.

The City neither includes a certificate of conference nor states in its motion to strike that it conferred with Reyes' counsel in a good-faith attempt to resolve this dispute without court intervention. It has violated Local Rule CV-7(g), and the Court could deny the motion on that basis alone. The Court nevertheless addresses the merits of the Motion to Strike.

**A.  Plaintiff's Exhibit 13A**

The City moves to strike the video of Reyes' arrest on January 4, 2019, because Reyes failed to disclose the video during the discovery period as required by Rule 26(a)(1)(A)(ii). Reyes states that he produced more than 20 videos to the City and that his failure to disclose Exhibit 13A was inadvertent and because of a "technical error." Dkt. 52 at 3.

Rule 37(c)(1) provides that "if a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." To evaluate whether a Rule 26 violation was harmless, courts look to four factors: "(1) the importance of the evidence; (2) the prejudice to the opposing party of including the evidence; (3) the possibility of curing such prejudice by granting a continuance; and (4) the explanation for the party's failure to disclose." *United States v. Grigsby*, 86 F.4th 602, 615 (5th Cir. 2023).

The Court finds that the Rule 26 violation was harmless. The City will suffer no prejudice from the video because it has been able to respond to it in its pleadings. The Court also finds that the video is important to the central issues here. For these reasons, the Court denies the City's Motion to Strike Plaintiff's Exhibit 13A.

**B.  Plaintiff's Exhibit 8**

The City also moves to strike some deposition testimony of APD Assistant Chief Eric Miesse, its Rule 30(b)(6) witness, under Rule 56(c)(2). In his deposition notice, Reyes asked the City to designate a witness to testify on: "(1) the City's policy and practice regarding arrests of individuals while engaged in filming police activity; (2) whether the arrests of Julian Reyes were consistent with, or in violation, of the City's policy and practice; and (3) whether any officer received any correction or discipline for any of Julian Reyes' arrests." Dkt. 52-2 at 1. During Miesse's

deposition, Reyes' attorney asked him several questions about whether APD had labeled Reyes an "anti-police activist" in its Master Name Index. Plaintiff's Ex. 8, Dkt. 47-1 at 92-97. The City argues that any testimony as to whether Reyes was labeled an anti-police activist was outside the scope of the noticed Rule 30(b)(6) topics and should be stricken.

The Court finds that testimony regarding whether Reyes was labeled an anti-police activist is sufficiently related to the noticed topics and relevant to Reyes' claims. Because Reyes alleges in his Amended Complaint that "APD had labelled Reyes an 'anti-police activist,'" the City had notice of this allegation. The Court denies the City's motion to strike the deposition testimony.

### III.   Motion for Summary Judgment

The City argues that it is entitled to summary judgment because "Reyes cannot meet his considerable evidentiary burden to establish liability against the City under 42 U.S.C. § 1983 or 42 U.S.C. § 2000aa." Dkt. 44 at 2.

### A.  Legal Standard

Summary judgment shall be rendered when the pleadings, the discovery and disclosure materials, and any affidavits on file show that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). A material fact dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is "material" if its resolution would affect the outcome of the case. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000).

When ruling on a motion for summary judgment, a court "may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court must view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S.

574, 587 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). But "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). "Accordingly, where testimony conflicts with video evidence, [courts] must view the 'facts in the light depicted by the videotape.'" *Crandel v. Hall*, 75 F.4th 537, 549 (5th Cir. 2023), *cert. denied*, 144 S. Ct. 1002 (2024) (quoting *Scott*, 550 U.S. at 380).

Once the moving party has shown the absence of a genuine issue of material fact, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 585 n.10, 586-87. The nonmovant "cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence.'" *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (citation omitted). The party opposing summary judgment must identify specific evidence in the record and articulate the precise way that evidence supports its claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). If the nonmoving party fails to make a showing sufficient to establish an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

**B.  Section 1983 Claim**

Reyes argues that his arrests by APD officers violated his First Amendment right to observe and record police activities and that his arrests were in retaliation for exercising his First Amendment rights. Reyes argues that the City is legally responsible for those constitutional violations under 42 U.S.C. § 1983.

In *Monell v. New York City Dept. of Social Services*, 436 U.S. 658 (1978), the Supreme Court held that a municipality can be found liable under § 1983 only where the municipality itself causes the constitutional violation at issue. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989). "*Respondeat superior* or vicarious liability will not attach under § 1983. It is only when the execution of the government's policy or custom inflicts the injury that the municipality may be held liable under § 1983." *Id.* (cleaned up).

To succeed on his Section 1983 claim against the City, Reyes must establish that (1) the City had an official policy, practice, or custom of unlawfully arresting individuals for filming police activities (2) promulgated by a municipal policymaker (3) that was the moving force behind the constitutional violation. *Monell*, 436 U.S. at 694; *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001). The City argues that Reyes' municipal liability claim fails because he raises no issue of material fact on these elements. The City also argues that Reyes' complaints of arrests before November 5, 2019 are barred by limitations.

### 1.  Statute of Limitations

First, the City argues that Reyes' arrests before November 5, 2019 are barred by the Texas statute of limitations for personal injury claims. Dkt. 44 at 12 (citing TEX. CIV. PRAC. & REM. CODE § 16.003(a) ("A person must bring suit for . . . personal injury . . . not later than two years after the day the cause of action accrues.")). But the City did not plead this affirmative defense in its Answer. Rule 8(c) requires: "In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense, including . . . statute of limitations." If the affirmative defense is not included in the complaint, it is waived. *Davis v. Huskipower Outdoor Equip. Corp.*, 936 F.2d 193, 198 (5th Cir. 1991). Once the defendant has waived that defense, it cannot revive it in a memorandum in support of a motion for summary judgment. *Funding Sys. Leasing Corp. v. Pugh*, 530 F.2d 91, 96 (5th Cir. 1976). The City has waived this affirmative defense.

**2. No First Amendment Violation**

The City cannot be liable under Section 1983 unless Reye's constitutional rights were violated. *Windham v. Harris Cnty., Tex.*, 875 F.3d 229, 243 (5th Cir. 2017) ("We have stated time and again that without an underlying constitutional violation, an essential element of municipal liability is missing.") (quoting *Doe ex rel. Magee v. Covington Cty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 866-67 (5th Cir. 2012)).

The First Amendment protects freedom of speech and freedom of the press. *Turner v. Lt. Driver*, 848 F.3d 678, 688 (5th Cir. 2017). The principles underlying the First Amendment support the particular right to record the police, subject only to reasonable time, place, and manner restrictions, as the Fifth Circuit explained in *Lt. Driver*:

> Filming the police contributes to the public's ability to hold the police accountable, ensure that police officers are not abusing their power, and make informed decisions about police policy. Filming the police also frequently helps officers; for example, a citizen's recording might corroborate a probable cause finding or might even exonerate an officer charged with wrongdoing. As one court explained:
>
> > Gathering information about government officials in a form that can readily be disseminated to others serves a cardinal First Amendment interest in protecting and promoting the free discussion of governmental affairs. Moreover, as the Supreme Court has noted, freedom of expression has particular significance with respect to government because it is here that the state has a special incentive to repress opposition and often wields a more effective power of suppression. This is particularly true of law enforcement officials, who are granted substantial discretion that may be misused to deprive individuals of their liberties. Ensuring the public's right to gather information about their officials not only aids in the uncovering of abuses, but also may have a salutary effect on the functioning of government more generally.
>
> Protecting the right to film the police promotes First Amendment principles.

*Id.* at 689-90 (cleaned up).

The First Amendment also generally prohibits government officials from subjecting an individual to retaliatory actions, such as arrest for engaging in protected speech. *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019). A plaintiff bringing a retaliatory arrest claim generally must plead and prove the absence of probable cause for the arrest. *Id.* at 404. There is a narrow exception to this rule if the plaintiff produces "objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Id.* at 407.

Probable cause for a warrantless arrest exists when all facts known by a police officer are sufficient for a reasonable person to conclude that the suspect had committed, or was committing, an offense. *Espinal v. City of Houston*, 96 F.4th 741, 745 (5th Cir. 2024). Probable cause "is not a high bar." *Kaley v. United States*, 571 U.S. 320, 338 (2014). "A 'fair probability' that the suspect has committed a crime is enough to establish probable cause. The likelihood that he has done so 'need not reach [even] the fifty percent mark.'" *Espinal*, 96 F.4th at 745 (quoting *United States v. Garcia*, 179 F.3d 265, 269 (5th Cir. 1999)).

Reyes alleges in his Amended Complaint that he was arrested at least thirteen times between June 2014 and March 2023 "while engaged in the exercise of his rights to free speech and the press." Dkt. 22 ¶ 12. But in response to the City's summary judgment motion, he points to evidence that he was arrested seven times, allegedly without probable cause. The record shows that his First Amendment rights were not violated.

### a.  January 4, 2019

APD officers arrested Reyes on January 4, 2019 for interference with public duties, a Class B misdemeanor. The police report states that Reyes was arrested after he interfered with APD officers trying to hand out citations to three homeless individuals for violating the City ordinance banning camping in public areas such as City sidewalks. Austin, Tex., Austin City Code, § 9-4-

11.[3] APD Officer Gadiel Alas states in his report that Reyes "inject[ed] himself into my lawful stop and began antagonizing the group of violators which caused them to become less cooperative with police." Dkt. 50 at 60. Alas states that he was writing a citation "and I had to stop and address Julian about his behavior which was disruptive and impeding my public duties." *Id.* Alas then asked Reyes several to move away from him so he could finish fulfilling his duties, but Reyes refused to comply. *Id.* at 60-61. Alas then arrested him. *Id.* at 61.

Reyes argues that he was arrested not for interfering with public duties but because he was filming police activities. Reyes claims that the video from his camera shows that he was singled out and arrested because he was recording the police. Dkt. 47 at 17. The video evidence does not support his allegations; instead, it confirms Alas' police report. The video shows two APD officers attempting to cite four homeless individuals camping on a City sidewalk for violating the City camping ban ordinance. Dkt. 47-1 at 252 (Plaintiff's Video Ex. 13A). Reyes approaches one of the APD officers while filming and says the officers should be arrested for harassing and bullying the individuals. Exh. 13A at 0:02:27-50. As the other individuals argue with the officers about the ordinance, one of the officers asks Reyes to move farther away and tells him he is interfering with police duties. *Id.* at 0:04:29. A few minutes later, the officer again asks Reyes to move away from the area, but he does not comply and tells the officer: "I am not going to do anything you tell me to do." *Id.* at 0:06:18. Reyes then is arrested.

While Reyes claims he was singled out and the only one arrested because he was filming police activities, the video shows he was the only individual failing to comply with police orders and interfering with their duties. The other individuals argued with the officers about the fairness of

---

[3] https://library.municode.com/tx/austin/codes/code_of_ordinances?nodeId=TIT9PRAC_CH9-4PRAC.

the City camping ban ordinance, but the video does not show them failing to comply with police orders or interfering with their duties. *Nieves*, 587 U.S. at 407.

The video shows that the officers had probable cause to arrest Reyes for interference with public duties. Section 38.15(a)(1) of the Texas Penal Code provides: "A person commits an offense if the person with criminal negligence interrupts, disrupts, impedes, or otherwise interferes with . . . a peace officer while the peace officer is performing a duty or exercising authority imposed or granted by law." Probable cause exists when a person does not follow instructions necessary for an officer to perform their duties. *See Spiller v. Harris Cnty., Tex.*, --- F.4th ----, 2024 WL 4002382, at *4 (5th Cir. Aug. 30, 2024) (finding that officer had probable cause to arrest plaintiff for interference with public duties when he failed to comply with instructions to move away from a crime scene); *Westfall v. Luna*, 903 F.3d 534, 544 (5th Cir. 2018) (finding that officer had probable cause to arrest plaintiff for interfering with his duties when she did not follow his instructions not to go into a home); *Childers v. Iglesias*, 848 F.3d 412, 415 (5th Cir. 2017) (finding that officer had probable cause to arrest plaintiff for violating officer's instructions when plaintiff "did more than just argue with police officers; he failed to comply with an officer's instruction, made within the scope of the officer's official duty and pertaining to physical conduct rather than speech").

### b. November 5, 2019

Reyes was arrested on November 5, 2019 for violating the City's camping ban ordinance. Dkt. 47-1 at 284. In the police report, APD Officer Patrick Walsh states he observed Reyes standing in front of a blue tent set up in a public area in downtown Austin. *Id.* Walsh repeatedly asked Reyes to take down the tent down because he was violating the City's camping ban ordinance and that his tent was too close to a roadway, where there was substantial risk that Reyes

or others could be hit by a car. *Id.* Walsh states that he arrested Reyes "after all options were exhausted and Reyes continued to disregard our commands to dissa[se]mble the tent." *Id.*

Reyes does not deny that he violated the City's camping ban ordinance and refused to comply with Walsh's instructions, but argues that his arrest was pretextual because he was a member of the press filming police activity. But, as he acknowledges, others "were also filming the police" and were not arrested. Dkt. 47 at 10. Reyes does not show the absence of probable cause or that he was singled out because he was filming. *Nieves*, 587 U.S. at 407; *Childers*, 848 F.3d at 415.

### c.   June 20, 2020

Reyes was arrested on June 20, 2020 for assaulting a police officer and assault with injury. Dkt. 44-22 at 11-14. Reyes claims he was arrested not because he assaulted a police officer, but because he was filming police activities. Dkt. 47 at 11.

Video from APD Officer Travis Larned's body-worn camera shows Larned asking a non-responsive individual sleeping on a sidewalk in downtown Austin to get up and move. Dkt 44-23 (Defendant's Video Ex. 23) at 0:01:38. After she does not respond, Larned calls emergency medical services, who arrive and put her on a stretcher. While she is being strapped to the stretcher by Travis County EMS, Reyes can be heard in the background yelling at Larned: "You be fucking nice to her," "she doesn't want to be strapped down," and "she doesn't need you pigs holding her down." *Id.* at 0:17:30-40. Reyes then approaches Larned and tells him that a pedestrian walking by had knocked Reyes' camera out of his hands and into the street. *Id.* at 0:18:09. Larned tells Reyes that he saw Reyes assaulting the pedestrian. Reyes denies that he assaulted the pedestrian and tells Larned he is going to go get his camera from the street. *Id.* at 18:55. Larned tells Reyes not to move and that he is being detained. *Id.* at 18:57. Reyes does not comply with Larned's

instructions and tries to leave. When Larned puts his hand on Reyes to stop him, Reyes strikes Larned's arm with his hand. *Id.* at 0:18:59. Larned then arrests Reyes. *Id.* at 0:19:15.

The video shows that Larned had probable cause to arrest Reyes for disregarding his instructions and assaulting him. *See Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) ("If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender."); *United States v. Watson*, 423 U.S. 411, 418 (1976) ("[A] peace officer was permitted to arrest without a warrant for a misdemeanor or felony committed in his presence."); Tex. Penal Code § 22.01(b)(1) ("An offense under Subsection (a)(1) is a Class A misdemeanor, except that the offense is a felony of the third degree if the offense is committed against . . . a person the actor knows is a public servant while the public servant is lawfully discharging an official duty.").

Reyes argues that he was singled out because he was filming Larned's activities, but the video shows that no other pedestrian assaulted Larned or refused to comply with his orders. Reyes does not show that his First Amendment rights were violated. *Nieves*, 587 U.S. at 407.

### d.   July 22, 2020

Reyes was arrested on July 22, 2020 for interfering with public duties. Dkt. 47 at 17. Reyes argues that he was arrested for recording police activities, while other pedestrians who did not record police activities were not arrested. *Id.* Reyes' video evidence contradicts his allegations.

In Reyes' video, two APD officers ask him to move away from a construction road work zone because they are concerned that he may get injured. Dkt. 47-1 at 347 (Plaintiff's Video Ex. 16B) at 0:06:34-08:15. Reyes tells the officers to "go fuck yourself and get out of my face," that they have no right to tell him to move, and that he is placing them "under citizen's arrest." *Id.* at 07:15-38. After Reyes repeatedly fails to comply with the officers' instructions to move away, the officers

arrest him for interfering with public duties. *Id.* at 0:08:57. The video shows that the officers had probable cause to arrest Reyes for interfering with their duties. *Westfall*, 903 F.3d at 544; *Childers*, 848 F.3d at 415. Another individual who appeared to be complying with the officers' instructions and who was also filming the APD officers was not arrested. *Id.* at 0:08:58. Reyes fails to show he was singled out for filming police activities. *Nieves*, 587 U.S. at 407.

### e.   October 24, 2021

Reyes was arrested on October 24, 2021 for disorderly conduct for making unreasonable noise in a public park, in violation of Texas Penal Code § 42.01(1)(5) (prohibiting individuals from intentionally or knowingly making "unreasonable noise in a public place"). Dkt. 44-13. Again, Reyes argues that he was arrested without probable cause and as "a pretext to stop Reyes from recording the police, Dkt. 28 ¶¶ 10-11, but the evidence contradicts his allegations.

In the video from APD Officer Richard Spitler's body-worn camera, Reyes can be seen and heard walking in and next to Republic Square Park in downtown Austin, using a megaphone to amplify his voice and a recording in which he repeats more than thirty times: "Fuck the police. All cops are bastards. All cops belong in a fucking jail cell." Dkt. 44-8 (Defendant's Video Ex. 8) at 0:02:14-03:05, 43:15-49:59. APD officers reported that "[t]he volume on the megaphone was so loud it could be heard a block away from where Reyes was using it." Dkt. 44-13 at 3. City of Austin Ordinance § 9-2-11 requires individuals to obtain a permit to operate sound equipment "audible to the public."[4]

Reyes continued to use the bullhorn for more than an hour, during which the officers received many complaints from people at and near the park about the noise and profanities from his hand-held amplifier. Defendant's Video Ex. 8 at 43:14; Dkt. 44-7 at 8, 15. APD officers then told Reyes

---

[4] https://library.municode.com/tx/austin/codes/code_of_ordinances?nodeId=TIT9PRAC_CH9-4PRAC.

he was violating the City Ordinance by using his amplifier in the park without a permit. *Id.* The video shows Reyes arguing with the officers and informing them that he was not violating the City Ordinance at that time because he was standing on the street next to the park. He continues to use his amplifier to play his profanity-laced recording and to shout expletives at the officers. *Id.* at 43:15-49:59. About 20 minutes later, Reyes reenters the park and again can be heard using his amplifier. *Id.* at 1:12. A few minutes later, APD officers approach Reyes and tell him he is being arrested for using the megaphone in a public park. *Id.* at 1:15:30. The officers take Reyes into custody and seize his cameras and the amplifier. *Id.* at 1:19:19-25.

The video shows the officers had probable cause to arrest Reyes for using an amplifier in violation of the City Ordinance and disorderly conduct for making unreasonable noise in a public place in violation of Texas Penal Code § 42.01(1)(5) (prohibiting individuals from intentionally or knowingly making "unreasonable noise in a public place"). *Atwater*, 532 U.S. at 354. Reyes also does not show he was singled out for the arrest because he was filming the police. The video shows another person also filming the police while yelling profanities, but she was not using a bullhorn and was not arrested. Defendant's Video Ex. 8 at 1:19:19-25; *Nieves*, 587 U.S. at 407.

### f.  December 23, 2023

Reyes again was arrested on December 23, 2023 for interfering with a police investigation and public duties. He argues that he was singled out and arrested because he was filming police activity, but evidence from his video camera shows that he attempted to interfere with a police investigation and willfully violated police orders. Dkt. 47-1 at 422 (Plaintiff's Video Ex. 18A) at 0:01:50-00. The video shows that APD officers arrest Reyes after they direct him to walk around a crime scene, but he does not comply and argues with the officers. *Id.* The video shows no other pedestrians failing to comply with police orders to move away from a crime scene. *Id.*

15

Failure to comply with a police officer's instruction to move away from a crime scene is not protected speech and gives the officer probable cause for arrest under Texas Penal Code § 38.15. *See Spiller*, 2024 WL 4002382, at *4 (finding that officer had probable cause to arrest plaintiff for interference with public duties when plaintiff refused to leave crime scene when asked to do so); *Duncantell v. State*, 230 S.W.3d 835, 842 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd). The Court finds that officers had probable cause to arrest Reyes for violating their instructions to move away from a crime scene, and that Reyes does not show he was singled out for recording the police. *Nieves*, 587 U.S. at 407.

### g. March 8, 2024

Finally, Reyes was arrested on March 8, 2024 during a protest rally in downtown Austin for blocking a hotel driveway. Dkt. 37. Again, Reyes argues he was arrested for filming police activity. Again, the video evidence again refutes his allegation. Video from APD Officer Christopher Juusola's body-worn camera shows that Reyes and others were told repeatedly to move their protest to a sidewalk rather than blocking a hotel driveway. Dkt. 44-38 (Defendants' Video Ex. 38) at 0:13:00. After they failed to comply, several individuals were arrested, including Reyes. *Id.* at 0:19:13-31. The Fifth Circuit has found that a police officer had probable cause to arrest an individual for violating the officer's instructions in similar circumstances. *See Childers*, 848 F.3d at 415 (finding that officer had probable cause to arrest plaintiff when he failed to comply with instructions to move his truck blocking police officers' entry to property). While Reyes and two other individuals arrested were filming at the time, the video shows that a woman also was arrested while standing in the driveway but not filming. *Id.* at 0:14:49. So Reyes does not show he was singled out because he was filming police activity. *Nieves*, 587 U.S. at 407.

### h.   Conclusion as to First Amendment Allegations

Because Reyes shows neither the absence of probable cause for any of his arrests nor "objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been," he does not show a violation of his First Amendment rights. *Nieves*, 587 U.S. at 404, 407. There can be no liability against the City. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *Windham*, 875 F.3d at 243.

### 3.   No Policy or Practice

Even if Reyes had shown that his First Amendment rights were violated, he fails to show that the City had policy, custom, or practice of violating his or others' First Amendment rights by arresting individuals for filming police activity.

> Official policy establishes culpability, and can arise in various forms. It usually exists in the form of written policy statements, ordinances, or regulations, but it may also arise in the form of a widespread practice that is "so common and well-settled as to constitute a custom that fairly represents municipal policy.."

*Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 848 (5th Cir. 2009) (quoting *Piotrowski*, 237 F.3d at 578). A plaintiff can also show a policy or custom in limited circumstances where a municipality fails to train or supervise its police officers which amounts to deliberate indifference or fails to discipline officers for committing constitutional violations that amounts to ratification of a policy. *Id.*

Reyes acknowledges that there is no official written or otherwise specifically articulated policy on which he can rely. As the City emphasizes, it has a written policy that "its officers shall not arrest people for or otherwise prevent people from recording police activity." *Id.* at 2 (citing APD General Order 302, Dkt. 44-40 at 8). He advances two theories of municipal liability. Reyes alleges that his repeated arrests by APD officers while he was filming police activity were part of a "persistent pattern of illegal conduct" that was so common and well-known to policymakers that

it constitutes a custom that fairly represents official policy. Dkt. 47 at 18. He also alleges the City is also liable because it ratified the illegal conduct by failing to discipline the APD officers involved in his arrests.

"A pattern is tantamount to official policy when it is so common and well-settled as to constitute a custom that fairly represents municipal policy." *Peterson*, 588 F.3d at 850. When prior incidents are used to prove a pattern, they "must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees." *Webster*, 735 F.2d at 842. "It is thus clear that a plaintiff must demonstrate a pattern of abuses that transcends the error made in a single case." *Peterson*, 588 F.3d at 850 (citation omitted).

A pattern also requires "sufficiently numerous prior incidents," as opposed to "isolated instances." *McConney v. City of Houston*, 863 F.2d 1180, 1184 (5th Cir.1989). In *Pineda v. City of Houston*, 291 F.3d 325 (5th Cir. 2002), eleven incidents of warrantless entry did not support a pattern of unconstitutional warrantless entry. In each of those eleven incidents, officers reported either consent or exigent circumstances. *Id.* at 329 n. 12. "Eleven incidents each ultimately offering equivocal evidence of compliance with the Fourth Amendment cannot support a pattern of illegality in one of the Nation's largest cities and police forces." *Id.* at 329. Similarly,

> 27 incidents of excessive force over a period of four years do not reflect a pattern that can be said to represent official policy of condoning excessive force so as to hold the City liable for the acts of its employees' unconstitutional conduct. To hold otherwise would be effectively to hold the City liable on the theory of *respondeat superior*, which is expressly prohibited by *Monell*.

*Peterson*, 588 F.3d 852.

In his Amended Complaint, Reyes alleges: "Between June 2, 2014, through March 2023, Reyes was repeatedly arrested and/or interfered with by APD officers while engaged in the exercise of

his rights to free speech and the press." Dkt. 22 ¶ 12. As sated, he alleges that he was arrested "at least thirteen times" during this period, *id.*, but comes forward with summary judgment evidence as to only seven of these arrests. And to show a pattern of illegal conduct, Reyes points to only three arrests over four years, on January 4, 2019, July 22, 2020, and December 23, 2023. *See* Dkt. 47 at 17-18. Applying *Pineda* and *Peterson*, the Court finds this insufficient to show a pattern of illegal conduct. *See Peterson*, 588 F.3d at 851. "Proving a pattern is a heavy burden, one that has rarely been met in our caselaw." *Shepherd v. Dallas Cnty.*, 591 F.3d 445, 452 (5th Cir. 2009); *see also Sanchez v. Young Cnty.*, 956 F.3d 785, 793 (5th Cir. 2020) ("Showing a pervasive pattern is a heavy burden.").

Reyes also relies only on his own three arrests to show a pattern of illegal conduct. "But plausibly to plead a practice 'so persistent and widespread as to practically have the force of law,' a plaintiff must do more than describe the incident that gave rise to his injury." *Pena v. City of Rio Grande City*, 879 F.3d 613, 622 (5th Cir. 2018) (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)); *see also Piotrowski*, 237 F.3d at 582 ("As is the case with allegations of failure to adequately screen prospective police officers, it is nearly impossible to impute lax disciplinary policy to the City without showing a pattern of abuses that transcends the error made in a single case."); *Barkai v. Nuendorf*, No. 21-CV-4060 (KMK), 2023 WL 2691712, at *35 (S.D.N.Y. Mar. 29, 2023) ("Plaintiff does not point to any instance of Rockland County allegedly implementing this widespread practice beyond his own case. This alone would be fatal to Plaintiff's *Monell* claim, even if he had asserted a viable underlying Constitutional violation."). The Court finds that Reyes does not show a persistent pattern of conduct that constitutes a City policy.

In the alternative, Reyes argues that the City had a policy of making illegal arrests of individuals who film police activity because the City did not discipline the officers involved in his

arrests. "If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final." *Peterson*, 588 F.3d at 854 (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)). But ratification "is limited to 'extreme factual situations.'" *Davidson v. City of Stafford, Texas*, 848 F.3d 384, 395 (5th Cir. 2017) (quoting *Peterson*, 588 F.3d at 848). A policymaker who defends conduct that is later shown to be unlawful does not necessarily incur liability on behalf of the municipality. *Peterson*, 588 F.3d at 848.

The underlying conduct by the officers involved in Reyes' arrests was insufficiently extreme for a finding of ratification. *Compare Grandstaff v. City of Borger*, 767 F.2d 161 (5th Cir. 1985), *with Davidson*, 848 F.3d at 395-96 (finding that arresting abortion protester without probable cause "while unconstitutional, was not sufficiently extreme to qualify for a finding of ratification"), *and Zarnow v. City of Wichita Falls*, 614 F.3d 161, 169 (5th Cir. 2010) (no ratification when a municipality defended the constitutionality and propriety of its officers' actions despite the court's later determination that the officers' actions violated the Fourth Amendment). Reyes cannot rely on the ratification theory to show a City policy or custom.

Because the Court finds that there was no custom or policy of the City, it need not consider the moving force factor. *Zarnow*, 614 F.3d at 171.

### 4.  No Evidence of a Policymaker

Finally, even if Reyes established all other elements of municipal liability, he identifies no municipal policymaker who could be held responsible, through actual or constructive knowledge, for enforcing an unconstitutional policy. *Piotrowski*, 237 F.3d at 579.

### 5.  Conclusion as to Motion for Summary Judgment

Because Reyes comes forward with no summary judgment evidence creating a fact issue that the City had an official policy, practice, or custom of unlawfully arresting individuals for filming

police activities, promulgated by a municipal policymaker who was the moving force behind the constitutional violation, this Magistrate Judge recommends that the District Court grant the City's motion for summary judgment as to his Section 1983 claim. *Monell*, 436 U.S. at 694.

## B. Privacy Protection Act Claims

Reyes also asserts that the seizures of his cameras, videos, and other materials during his arrests on January 4, 2019 and October 24, 2021 violated the Privacy Protection Act ("PPA"), 42 U.S.C. § 2000aa. The PPA "generally prohibits government officials from searching for and seizing documentary materials possessed by a person in connection with a purpose to disseminate information to the public." *Citicasters v. McCaskill*, 89 F.3d 1350, 1353 (8th Cir. 1996).

Congress passed the PPA in response to *Zurcher v. Stanford Daily*, 436 U.S. 547, 567-68 (1978), in which the Supreme Court held that the Fourth Amendment does not prohibit the search of a newspaper office for photographs revealing the identities of individuals who assaulted police officers during a demonstration, even though no one employed by the newspaper was suspected of involvement. *See Guest v. Leis*, 255 F.3d 325, 340 (6th Cir. 2001) ("[T]he PPA was enacted to afford the press and certain other persons not suspected of committing a crime with protections not provided currently by the Fourth Amendment."). Although the statute is more than 40 years old, caselaw on the PPA is sparse.

The PPA provides that

> it shall be unlawful for a government officer or employee, in connection with the investigation or prosecution of a criminal offense, to search for or seize any work product materials possessed by a person reasonably believed to have a purpose to disseminate to the public a newspaper, book, broadcast, or other similar form of public communication, in or affecting interstate or foreign commerce.

42 U.S.C. § 2000aa(a).[5] The PPA also prohibits the search and seizure of "documentary materials,[6] other than work product materials, possessed by a person in connection with a purpose to disseminate to the public a newspaper, book, broadcast, or other similar form of public communication, in or affecting interstate or foreign commerce." *Id.* § 2000aa(b).

The PPA "carves out various exceptions to the prohibition against searches and seizures of materials intended for public dissemination." *Sennett v. United States*, 667 F.3d 531, 535 (4th Cir. 2012). Under the "suspect exception," the police can avoid the constraints of the PPA "when the person possessing the materials is a criminal suspect, rather than an innocent third party." *Id.* (cleaned up). For the government to take advantage of that exception, there must be "probable cause to believe that the person possessing such materials has committed or is committing the criminal offense to which the materials relate." 42 U.S.C. § 2000aa(a)(1). The materials exempted under the suspect exception "must relate to the offense." *Guest*, 255 F.3d at 341.

Section 2000aa-6 of the PPA creates a private right of action for damages resulting from a search or seizure of materials that violates the statute. 42 U.S.C. § 2000aa-6(a). A "person aggrieved" by such an unlawful search or seizure may bring the suit "against the United States, against a State which has waived its sovereign immunity under the Constitution to a claim for

---

[5] "Work product materials" are defined in 42 U.S.C. § 2000aa-7(b) as:

> materials, other than contraband or the fruits of a crime or things otherwise criminally possessed, or property designed or intended for use, or which is or has been used, as the means of committing a criminal offense, and (1) in anticipation of communicating such materials to the public, are prepared, produced, authored, or created, whether by the person in possession of the materials or by any other person; (2) are possessed for the purposes of communicating such materials to the public; and (3) include mental impressions, conclusions, opinions, or theories of the person who prepared, produced, authored, or created such material.

[6] "Documentary materials" are defined in 42 U.S.C. § 2000aa-7(a) as:

> materials upon which information is recorded, and includes, but is not limited to, written or printed materials, photographs, motion picture films, negatives, video tapes, audio tapes, and other mechanically, magentically1 or electronically recorded cards, tapes, or discs, but does not include contraband or the fruits of a crime or things otherwise criminally possessed, or property designed or intended for use, or which is or has been used as, the means of committing a criminal offense.

damages resulting from a violation of this chapter, or against any other governmental unit." *Id.* A plaintiff also may sue "an officer or employee of a State who has violated this chapter . . . if such State has not waived its sovereign immunity. *Id.*

### 1. October 24, 2021 Seizure

Reyes alleges that he was arrested without probable cause by APD officers on October 24, 2021, "while exercising his free speech rights on a public sidewalk" and as "a pretext to stop Reyes from recording the police." Dkt. 28 ¶¶ 10-11. He alleges that during this arrest his cameras, "which are his primary work equipment, were seized by APD," and that his cameras "contained work product and documentary materials that he intended to publish to the public." *Id.* ¶ 10. Reyes asserts that APD officers seized his work product and documentary materials "knowing, believing, or with reason to believe that Reyes possessed such materials with the purpose to disseminate to the public." *Id.* ¶ 23. He contends that the APD officers had "no probable cause to believe that Reyes had committed a criminal offense to which the materials related." *Id.* ¶ 25.

The City argues that Reyes' PPA claim fails because the APD officers did not have a reasonable belief that he was a member of the press who intended to "disseminate" the video recordings "to the public," as required by 42 U.S.C. § 2000aa(a). Dkt. 44 at 18. The City emphasizes that Reyes "did not identify himself as a member of the press," but instead "identified himself as an activist for the unhoused" and "a protester against Ford Motor Company." *Id.*

The record supports the City's position. The evidence shows that workers called 911 to complain about a protestor yelling profanities through an amplifier during the event. Dkt. 44-6 at 6; Dkt. 44-7 at 8; Dkt. 44-13 at 3. As stated above, body-worn camera video confirms that Reyes repeatedly uttered profanities through a megaphone while "numerous children" were in the park. Dkt. 44-7 at 8. The officers who arrested Reyes seized his cameras and megaphone as evidence of his offense. *Id.* at 9, 19-20; Dkt. 44-8 at 1:15:24, 1:19:19-25.

Reyes comes forward with no competent summary judgment evidence to create the existence of a genuine fact issue that APD officers reasonably believed they were seizing work product materials "to disseminate to the public a newspaper, book, broadcast, or other similar form of public communication." 42 U.S.C. § 2000aa(a). He offers evidence that the City's electronic database describes him as an "anti-police activist" and reflects that his employer is the *Challenger Street Newspaper*, a publication that advocates for Austin's homeless population, "so the city **knows** he is a journalist." Dkt. 47 at 6. Plaintiff's Exs. 9 and 10, Dkt. 47-1 at 173-231. But this does not show that the officers who arrested Reyes on October 24, 2021 knew he was a reporter or believed he was planning to disseminate his videos to the public. The video evidence shows Reyes accusing the officers of violating his constitutional rights, but at no point informing them that he is a reporter or that he is planning to disseminate the videos to the public. Reyes does not offer competent summary judgment evidence to show a violation of the PPA.

The record also supports the City's argument that the suspect exception to the PPA applies because Reyes was filming while he used a voice amplifier in a public park, so the cameras seized contained evidence related to the offense for which he was arrested. *See* Dkt. 44-7 at 9 (police report stating that Reyes was arrested for disorderly conduct by noise and for using megaphone in public park and arresting officer "seized both cameras, and megaphone as evidence"); Dkt. 44-13 at 3 (affidavit for search warrant stating that Reyes was arrested for disorderly conduct and that "forensic analysis of the . . . video devices would provide evidence" of that offense). The Court finds that the suspect exception to the PPA applies. *See Sennett*, 667 F.3d at 536 (finding that suspect exception applied when government showed probable cause to believe that photojournalist was involved in acts of vandalism and photographic equipment seized was related to the vandalism). Even if knowledge that Reyes was employed by a newspaper could be imputed to the

arresting officers, the suspect exception to the PPA would apply because at the time of the seizure, there was probable cause to believe that Reyes was violating the law by using a bullhorn in the park. Journalists are not excluded from the PPA's suspect exception. *Id.* at 537. Reyes comes forward with no competent summary judgment evidence creating a genuine issue of material fact as to whether the suspect exception bars his claim.

### 2. January 4, 2019 Seizure

Reyes argues that the City has waived any argument it is entitled to summary judgment on his PPA claim for seizure of his cameras on January 4, 2019, because it did not address the January 4, 2019 seizure in its summary judgment motion. Dkt. 47 at 26. But in his Amended Complaint, Reyes mentions only the seizure of his cameras on October 24, 2021, not January 4, 2019. Dkt. 28 ¶ 10. Reyes has waived any claim that the January 4, 2019 seizure violated the PPA. *See Cutrera v. Bd. of Sup'rs of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) ("A claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court.").

Even had Reyes not waived that claim, it would fail because he produces no summary judgment evidence that the officers who arrested him on that day knew he was a journalist or believed he was planning to disseminate his videos to the public. The video of Reyes' 2019 arrest shows that he did not identify himself as a reporter or tell the officers that he was filming the police with the intent to disseminate the videos to the public. Plaintiff's Ex. 13A, Dkt. 47-1 at 253. Because he comes forward with no evidence that the officers believed he was planning to distribute those videos to the public, he does not show a violation of the PPA. The record also shows that the suspect exception to the PPA would apply to this arrest because Reyes was filming before and while he was arrested, so the cameras seized contained evidence related to the offense for which he was arrested.

**3. Waived Claim**

For the first time in his response brief, Reyes argues that the City's General Order 302 "violates the PPA, on its face, as to citizen and professional journalists." Dkt. 47 at 25. He did not assert this claim in his Amended Complaint. Again, claims not raised in the complaint but only in response to a motion for summary judgment are not properly before the Court. *Cutrera*, 429 F.3d at 113. The Court does not address this argument.

## IV.   Order

Defendant City of Austin's Motion to Strike Plaintiff's Summary Judgment Evidence (Dkt. 49) is **DENIED**.

## V.   Recommendation

This Magistrate Judge **RECOMMENDS** that the District Court **GRANT** Defendant City of Austin's Motion for Summary Judgment (Dkt. 44) as to both of Plaintiff's claims and enter a final judgment for the City of Austin.

## VI.   Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C.

§ 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

    **SIGNED** on September 19, 2024.

_____

SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE
