# Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JULIAN REYES, | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | |
| | § | |
| CITY OF AUSTIN | § | CASE NO. 1:21-CV-0992-RP |
| *Defendant.* | § | |

**DEFENDANT CITY OF AUSTIN'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Defendant City of Austin files its Proposed Findings of Fact and Conclusions of Law[1] as follows:

**I.   SECTION 1983 CLAIM**

Plaintiff Julian Reyes contends that his arrests by APD officers violated his First Amendment right to observe and record police activities, and that his arrests were in retaliation for exercising his First Amendment rights. Reyes asserts a claim under 42 U.S.C. §1983 against the City for those alleged constitutional violations.

The general contours of municipal liability for the conduct of its employees under 42 U.S.C. §1983 are well-defined in the Fifth Circuit. A city may not be held liable if the court finds that the plaintiff's constitutional rights were not violated. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *Mace v. City of Palestine*, 333 F.3d 621, 625 (5th Cir. 2003). Even if a city employee or police officer violated a plaintiff's constitutional rights, a city may not be found liable under §1983 under a theory of *respondeat superior*. *Monell v. Dept. of Social Services*, 436 U.S. 658, 694 (1978); *Johnson v. Deep East Texas Regional Narcotics Trafficking Task Force*, 379 F.3d

---

[1] The City's Proposed Findings of Fact and Conclusions of Law are based largely on the Magistrate Judge's Order and Report and Recommendations. (Doc. 56)

293, 308 (5th Cir. 2004). Cities are almost never liable under §1983 for the isolated actions of their employees, and they can only be held liable for acts that are directly attributable to it "through some official action or imprimatur." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001).

To establish municipal liability under §1983, a plaintiff must show: (1) an official policy (2) promulgated by the municipal policy maker (3) which was the moving force behind the violation of a constitutional right. *Id.* A policy or custom is official only "when it results from the decision or acquiescence of the municipal officer or body with final policymaking authority over the subject of the offending policy." *Jett v. Dallas Independent School Dist.*, 491 U.S. 701, 737 (1989); *Peterson v. City of Fort Worth, Texas*, 588 F.3d 838, 847 (5th Cir. 2009). To establish the "moving force" element, a plaintiff must show a direct causal link between the policy and the constitutional violation. *Piotrowski*, 237 F.3d at 580; *Peterson*, 588 F.3d at 848.

The City cannot be liable under Section 1983 unless Reye's constitutional rights were violated. *Windham v. Harris Cnty., Tex.,* 875 F.3d 229, 243 (5th Cir.2017). The First Amendment protects freedom of speech and freedom of the press. *Turner v. Lt. Driver,* 848 F.3d 678, 688 (5th Cir. 2017). The First Amendment also generally prohibits government officials from subjecting an individual to retaliatory actions, such as arrest for engaging in protected speech. *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019). A plaintiff bringing a retaliatory arrest claim generally must plead and prove the absence of probable cause for the arrest. *Id.* at 404. There is a narrow exception to this rule if the plaintiff produces "objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Id.* at 407.

Probable cause for a warrantless arrest exists when all facts known by a police officer are sufficient for a reasonable person to conclude that the suspect had committed, or was committing, an offense. *Espinal v. City of Houston*, 96 F.4th 741, 745 (5th Cir. 2024). Probable cause "is not a high bar." *Kaley v. United States*, 571 U.S. 320, 338 (2014). "A 'fair probability' that the suspect has committed a crime is enough to establish probable cause. The likelihood that he has done so 'need not reach [even] the fifty percent mark.'" *Espinal*, 96 F.4th at 745 (quoting *United States v. Garcia*, 179 F.3d 265, 269 (5th Cir. 1999)).

Reyes produced evidence that he was arrested seven times by APD officers allegedly without probable cause. The record demonstrates that Reyes's First Amendment rights were not violated.

**a. January 4, 2019**

APD officers arrested Reyes on January 4, 2019 for interference with public duties, a Class B misdemeanor. The police report states that Reyes was arrested after he interfered with APD officers trying to hand out citations to three homeless individuals for violating a City ordinance banning camping in public areas such as City sidewalks. Austin, Tex., Austin City Code, § 9-4-11. APD Officer Gadiel Alas states in his report that Reyes "inject[ed] himself into my lawful stop and began antagonizing the group of violators which caused them to become less cooperative with police." (Ex. D-47, Alas Report 2019-41140). Alas states that he was writing a citation "and I had to stop and address Julian about his behavior which was disruptive and impeding my public duties." *Id.* Alas then asked Reyes several to move away from him so he could finish fulfilling his duties, but Reyes refused to comply. *Id.* at 60-61. Alas then arrested him. *Id.* at 61.

Reyes argues that he was arrested not for interfering with public duties but because he was filming police activities. Reyes claims that the video from his camera shows that he was singled out and arrested because he was recording the police. The video evidence does not support his allegations; instead, it confirms Alas' police report. The video shows two APD officers attempting to cite four homeless individuals camping on a City sidewalk for violating the City camping ban ordinance. Dkt. 47-1 at 252(Plaintiff's Video Ex. 13A). Reyes approaches one of the APD officers while filming and says the officers should be arrested for harassing and bullying the individuals. (Ex. 13A at 0:02:27-50). As the other individuals argue with the officers about the ordinance, one of the officers asks Reyes to move farther away and tells him he is interfering with police duties. *Id.* at 0:04:29. A few minutes later, the officer again asks Reyes to move away from the area, but he does not comply and tells the officer: "I am not going to do anything you tell me to do." *Id.* at 0:06:18. Reyes then is arrested.

While Reyes claims he was singled out and the only one arrested because he was filming police activities, the video shows he was the only individual failing to comply with police orders and interfering with their duties. The other individuals argued with the officers about the fairness of the City camping ban ordinance, but the video does not show them failing to comply with police orders or interfering with their duties. *Nieves*, 587 U.S. at 407.

The video shows that the officers had probable cause to arrest Reyes for interference with public duties. Section 38.15(a)(1) of the Texas Penal Code provides: "A person commits an offense if the person with criminal negligence interrupts, disrupts, impedes, or otherwise interferes with . . . a peace officer while the peace officer is performing a duty or exercising authority imposed or granted by law." Probable cause exists when a person does not follow instructions necessary for an officer to perform their duties. *See Spiller v. Harris Cnty., Tex.*, ---

F.4th ----, 2024 WL 4002382, at *4 (5th Cir. Aug. 30, 2024) (finding that officer had probable cause to arrest plaintiff for interference with public duties when he failed to comply with instructions to move away from a crime scene); *Westfall v. Luna*, 903 F.3d 534, 544 (5th Cir. 2018) (finding that officer had probable cause to arrest plaintiff for interfering with his duties when she did not follow his instructions not to go into a home); *Childers v. Iglesias*, 848 F.3d 412, 415 (5th Cir. 2017) (finding that officer had probable cause to arrest plaintiff for violating officer's instructions when plaintiff "did more than just argue with police officers; he failed to comply with an officer's instruction, made within the scope of the officer's official duty and pertaining to physical conduct rather than speech").

**b. November 5, 2019**

Reyes was arrested on November 5, 2019 for violating the City's camping ban ordinance. In the police report, APD Officer Patrick Walsh states he observed Reyes standing in front of a blue tent set up in a public area in downtown Austin. (Ex. D-4) Walsh repeatedly asked Reyes to take down the tent down because he was violating the City's camping ban ordinance and that his tent was too close to a roadway, where there was substantial risk that Reyes or others could be hit by a car. *Id.* Walsh states that he arrested Reyes "after all options were exhausted and Reyes continued to disregard our commands to disassemble the tent." *Id.*

Reyes does not deny that he violated the City's camping ban ordinance and refused to comply with Walsh's instructions but argues that his arrest was pretextual because he was a member of the press filming police activity. But, as he acknowledges, others "were also filming the police" and were not arrested. Dkt. 47 at 10. Reyes does not show the absence of probable cause or that he was singled out because he was filming. *Nieves*, 587 U.S. at 407; *Childers*, 848 F.3d at 415.

**c. June 20, 2020**

Reyes was arrested on June 20, 2020 for assaulting a police officer and assault with injury. (Ex. D-22 at 11-14). Reyes claims he was arrested not because he assaulted a police officer, but because he was filming police activities. Video from APD Officer Travis Larned's body-worn camera shows Larned asking a non-responsive individual sleeping on a sidewalk in downtown Austin to get up and move. (Ex. D-23 at 0:01:38). After she does not respond, Larned calls emergency medical services, who arrive and put her on a stretcher. While she is being strapped to the stretcher by Travis County EMS, Reyes can be heard in the background yelling at Larned: "You be fucking nice to her," "she doesn't want to be strapped down," and "she doesn't need you pigs holding her down." *Id.* at 0:17:30-40. Reyes then approaches Larned and tells him that a pedestrian walking by had knocked Reyes' camera out of his hands and into the street. *Id.* at 0:18:09. Larned tells Reyes that he saw Reyes assaulting the pedestrian. Reyes denies that he assaulted the pedestrian and tells Larned he is going to go get his camera from the street. *Id.* at 18:55. Larned tells Reyes not to move and that he is being detained. *Id.* at 18:57. Reyes does not comply with Larned's instructions and tries to leave. When Larned puts his hand on Reyes to stop him, Reyes strikes Larned's arm with his hand. *Id.* at 0:18:59. Larned then arrests Reyes. *Id.* at 0:19:15.

The video shows that Larned had probable cause to arrest Reyes for disregarding his instructions and assaulting him. *See Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) ("If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender."); *United States v. Watson*, 423 U.S. 411, 418 (1976) ("[A] peace officer was permitted to arrest without a warrant for a misdemeanor or felony committed in his presence."); Tex. Penal

Code § 22.01(b)(1) ("An offense under Subsection (a)(1) is a Class A misdemeanor, except that the offense is a felony of the third degree if the offense is committed against . . . a person the actor knows is a public servant while the public servant is lawfully discharging an official duty.").

Reyes argues that he was singled out because he was filming Larned's activities, but the video shows that no other pedestrian assaulted Larned or refused to comply with his orders. Reyes does not show that his First Amendment rights were violated. *Nieves*, 587 U.S. at 407.

**d. July 22, 2020**

Reyes was arrested on July 22, 2020 for interfering with public duties. Reyes argues that he was arrested for recording police activities, while other pedestrians who did not record police activities were not arrested. Reyes' video evidence contradicts his allegations.

In Reyes' video, two APD officers ask him to move away from a construction road work zone because they are concerned that he may get injured. Dkt. 47-1 at 347 (Plaintiff's Video Ex. 16B at 0:06:34-08:15). Reyes tells the officers to "go fuck yourself and get out of my face," that they have no right to tell him to move, and that he is placing them "under citizen's arrest." *Id.* at 07:15-38. After Reyes repeatedly fails to comply with the officers' instructions to move away, the officers arrest him for interfering with public duties. *Id.* at 0:08:57. The video shows that the officers had probable cause to arrest Reyes for interfering with their duties. *Westfall*, 903 F.3d at 544; *Childers*, 848 F.3d at 415. Another individual who appeared to be complying with the officers' instructions and who was also filming the APD officers was not arrested. *Id.* at 0:08:58. Reyes fails to show he was singled out for filming police activities. *Nieves*, 587 U.S. at 407.

**e. October 24, 2021**

Reyes was arrested on October 24, 2021 for disorderly conduct for making unreasonable noise in a public park, in violation of Texas Penal Code § 42.01(1)(5) (prohibiting individuals from intentionally or knowingly making "unreasonable noise in a public place"). In the video from APD Officer Richard Spitler's body-worn camera, Reyes can be seen and heard walking in and next to Republic Square Park in downtown Austin, using a megaphone to amplify his voice and a recording in which he repeats more than thirty times: "Fuck the police. All cops are bastards. All cops belong in a fucking jail cell." (Ex. D-8 at 0:02:14-03:05, 43:15-49:59) APD officers reported that "[t]he volume on the megaphone was so loud it could be heard a block away from where Reyes was using it." (Ex. D-13 at 3) City of Austin Ordinance § 9-2-11 requires individuals to obtain a permit to operate sound equipment "audible to the public."

Reyes continued to use the bullhorn for more than an hour, during which the officers received many complaints from people at and near the park about the noise and profanities from his hand-held amplifier. (Ex. D-8 at 43:14) APD officers then told Reyes he was violating the City Ordinance by using his amplifier in the park without a permit. *Id.* The video shows Reyes arguing with the officers and informing them that he was not violating the City Ordinance at that time because he was standing on the street next to the park. He continues to use his amplifier to play his profanity-laced recording and to shout expletives at the officers. *Id.* at 43:15-49:59. About 20 minutes later, Reyes reenters the park and again can be heard using his amplifier. *Id.* at 1:12. A few minutes later, APD officers approach Reyes and tell him he is being arrested for using the megaphone in a public park. *Id.* at 1:15:30. The officers take Reyes into custody and seize his cameras and the amplifier. *Id.* at 1:19:19-25.

The video shows the officers had probable cause to arrest Reyes for using an amplifier in violation of the City Ordinance and disorderly conduct for making unreasonable noise in a public place in violation of Texas Penal Code § 42.01(1)(5) (prohibiting individuals from intentionally or knowingly making "unreasonable noise in a public place"). *Atwater*, 532 U.S. at 354. Reyes also does not show he was singled out for the arrest because he was filming the police. The video shows another person also filming the police while yelling profanities, but she was not using a bullhorn and was not arrested. Defendant's Video Ex. 8 at 1:19:19-25; *Nieves*, 587 U.S. at 407.

**f. December 23, 2023**

Reyes again was arrested on December 23, 2023 for interfering with a police investigation and public duties. He argues that he was singled out and arrested because he was filming police activity, but evidence from his video camera shows that he attempted to interfere with a police investigation and willfully violated police orders. Dkt. 47-1 at 422 (Plaintiff's Video Ex. 18A at 0:01:50-00). The video shows that APD officers arrest Reyes after they direct him to walk around a crime scene, but he does not comply and argues with the officers. *Id.* The video shows no other pedestrians failing to comply with police orders to move away from a crime scene. *Id.*

Failure to comply with a police officer's instruction to move away from a crime scene is not protected speech and gives the officer probable cause for arrest under Texas Penal Code § 38.15. *See Spiller*, 2024 WL 4002382, at *4 (finding that officer had probable cause to arrest plaintiff for interference with public duties when plaintiff refused to leave crime scene when asked to do so); *Duncantell v. State*, 230 S.W.3d 835, 842 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd). The Court finds that officers had probable cause to arrest Reyes for violating

their instructions to move away from a crime scene, and that Reyes does not show he was singled out for recording the police. *Nieves*, 587 U.S. at 407.

**g. March 8, 2024**

Reyes was arrested on March 8, 2024 during a protest rally in downtown Austin for blocking a hotel driveway. Again, Reyes argues he was arrested for filming police activity. Again, the video evidence again refutes his allegation. Video from APD Officer Christopher Juusola's body-worn camera shows that Reyes and others were told repeatedly to move their protest to a sidewalk rather than blocking a hotel driveway. (Ex. D-38 at 0:13:00) After they failed to comply, several individuals were arrested, including Reyes. *Id.* at 0:19:13-31. The Fifth Circuit has found that a police officer had probable cause to arrest an individual for violating the officer's instructions in similar circumstances. *See Childers*, 848 F.3d at 415 (finding that officer had probable cause to arrest plaintiff when he failed to comply with instructions to move his truck blocking police officers' entry to property). While Reyes and two other individuals arrested were filming at the time, the video shows that a woman also was arrested while standing in the driveway but not filming. *Id.* at 0:14:49. Reyes does not show he was singled out because he was filming police activity. *Nieves*, 587 U.S. at 407.

Because Reyes shows neither the absence of probable cause for any of his arrests nor "objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been," he does not show a violation of his First Amendment rights. *Nieves*, 587 U.S. at 404, 407. There can be no liability against the City. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *Windham*, 875 F.3d at 243.

Even if Reyes had proven that his First Amendment rights were violated, he fails to show that the City had a policy, custom or practice of violating First Amendment rights by arresting

individuals for filming police activity. The undisputed evidence is that APD has a policy, in the form of written General Order 302, prohibiting officers from arresting or otherwise impeding members of the public from recording police activity "unless such recordings interfere with police activity." (Ex. D-49)

Reyes also has not established any pattern that could constitute official policy. A pattern amounts to an official policy "when it is so common and well-settled as to constitute a custom that fairly represents municipal policy." *Peterson v. City of Fort Worth*, 588 F.3d 838, 850 (internal quotes and citations omitted). To establish that prior incidents constitute a pattern, a plaintiff must show that the incidents have occurred for so long or with such frequency that policymakers must know that the improper conduct is the ordinary and accepted practice of the employees. *Id.* A pattern will not be established based on isolated incidents. Instead, the pattern must be composed of incidents that are numerous and similar to the specific violation alleged. *Id.* at 850-851. Reyes has not demonstrated a persistent pattern of conduct that constitutes a City policy, custom or practice.

Additionally, Reyes has not proven a causal link between the City's alleged policy, custom or practice and his arrests. Reyes must prove that his filming of police activity was the moving force behind his arrests. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) citing *Monell v. Dep't. of Social Services*, 436 U.S. 658, 694 (1978). Reyes has not demonstrated that any alleged policy, custom or practice of the City was the moving force of his arrests. Accordingly, Reyes has not met his burden to show a material fact to meet the third prong of a §1983 claim. For the above reasons, the Court finds that Plaintiff's Section 1983 claim should be dismissed.

## II.   Privacy Protection Act Claims

Reyes also asserts that the seizures of his cameras, videos, and other materials during his arrests on January 4, 2019 and October 24, 2021 violated the Privacy Protection Act ("PPA"), 42 U.S.C. § 2000aa. The PPA "generally prohibits government officials from searching for and seizing documentary materials possessed by a person in connection with a purpose to disseminate information to the public." *Citicasters v. McCaskill*, 89 F.3d 1350, 1353 (8th Cir. 1996). To prevail on a claim of unlawful seizure of work product and documentary materials, a plaintiff must show that (1) he was a person reasonably believed to have a purpose to disseminate to the public a newspaper, book, broadcast, or other similar form of public communication, in or affecting interstate or foreign commerce, and (2) that there was no probable cause to believe he had committed an offense to which the materials relate. 42 U.S.C. §2000aa.

The PPA "carves out various exceptions to the prohibition against searches and seizures of materials intended for public dissemination." *Sennett v. United States*, 667 F.3d 531, 535 (4th Cir. 2012). Under the "suspect exception," the police can avoid the constraints of the PPA "when the person possessing the materials is a criminal suspect, rather than an innocent third party." *Id.* (cleaned up). For the government to take advantage of that exception, there must be "probable cause to believe that the person possessing such materials has committed or is committing the criminal offense to which the materials relate." 42 U.S.C. § 2000aa(a)(1). The materials exempted under the suspect exception "must relate to the offense." *Guest*, 255 F.3d at 341.

### 1.  October 24, 2021 Seizure

Reyes alleges that he was arrested without probable cause by APD officers on October 24, 2021, "while exercising his free speech rights on a public sidewalk" and as "a pretext to stop Reyes from recording the police." Dkt. 28 ¶¶ 10-11. He alleges that during this arrest his

cameras, "which are his primary work equipment, were seized by APD," and that his cameras "contained work product and documentary materials that he intended to publish to the public."

Reyes's PPA claim fails because APD officers did not have a reasonable belief that Reyes was a member of the press who intended to disseminate the video recordings to the public as required by 42 U.S.C. §2000aa(a). The video evidence shows Reyes accusing the officers of violating his constitutional rights, but at no point informing them that he is a reporter or that he is planning to disseminate the videos to the public. Moreover, the suspect exception to the PPA applies because Reyes was filming while he used a voice amplifier in a public park, and the cameras seized contained evidence related to the offense for which he was arrested.

### 2. January 4, 2019 Seizure

The video of Reyes' 2019 arrest shows that he did not identify himself as a reporter or tell the officers that he was filming the police with the intent to disseminate the videos to the public. Doc. 47-1 at 253. Because he comes forward with no evidence that the officers believed he was planning to distribute those videos to the public, he does not show a violation of the PPA. The record also shows that the suspect exception to the PPA would apply to this arrest because Reyes was filming before and while he was arrested, so the cameras seized contained evidence related to the offense for which he was arrested.

For the above reasons, the Court finds that Plaintiff's claims under the Privacy Protection Act, 42 U.S.C. § 2000aa, should be dismissed.

>RESPECTFULLY SUBMITTED,
>
>DEBORAH THOMAS, INTERIM CITY ATTORNEY
>MEGHAN RILEY, CHIEF, LITIGATION
>
>　　*/s/ H. Gray Laird*
>　　H. Gray Laird

                                                Assistant City Attorney
                                                State Bar No. 24087054
                                                gray.laird@austintexas.gov
                                                City of Austin Law Department
                                                P.O. Box 1546
                                                Austin, Texas 78767-1546
                                                Telephone: (512) 974-1342
                                                Facsimile: (512) 974-1311

**ATTORNEYS FOR DEFENDANT**

**CERTIFICATE OF SERVICE**

       This is to certify that on December 5, 2024 I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States District Court for the Western District of Texas on all parties registered or otherwise requesting electronic notice in this case.

                                                /s/    H. Gray Laird
                                                H. Gray Laird