IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JULIAN REYES, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 1:21-CV-992-RP |
| | § | |
| CITY OF AUSTIN, | § | |
| | § | |
| Defendant. | § | |

## ORDER

Before the Court is the Defendant City of Austin's ("City of Austin") Motion for Summary

Judgment. (Dkt. 44). Plaintiff Julian Reyes ("Reyes") filed a response brief, (Dkt. 47), to which the

City of Austin replied, (Dkt. 50). The Court referred the motion to United States Magistrate Judge

Susan Hightower for a report and recommendation pursuant to 28 U.S.C. § 636(b), Federal Rule of

Civil Procedure 72, and Rule 1 of Appendix C of the Local Rules of the United States District Court

for the Western District of Texas. (Dkt. 9). Judge Hightower issued her report and recommendation,

(Dkt. 56), to which Reyes objected, (Dkts. 61, 62). The City of Austin filed a response to Reyes'

objections. (Dkt. 64). Having considered the parties' arguments, the factual record, and the relevant

law, the Court will adopt the report and recommendation in part and reject it in part, and will deny

the City of Austin's motion for summary judgment as to the existence of a Privacy Protection Act

Violation on January 4, 2019, and grant it in all other respects.

## I. BACKGROUND

Reyes is a self-described citizen journalist and advocate for homeless Austinites. (R & R,

Dkt. 56, at 1, 6). Reyes has frequently filmed police activity and several times has been arrested by

the Austin Police Department ("APD"). (*Id.*). Reyes alleges that (1) he been arrested or interfered

with on at least thirteen occasions between June 2014 and March 2023 without probable cause and

as a pretext to stop him from recording police, to retaliate against him, and to discourage him from

doing so in the future, and (2) APD, by January 2017, had labeled Reyes as an "anti-police activist"

based on his repeated activities filming the police. (Dkt. 61, at 1–2). Based on these allegations,

Reyes sued the City of Austin under 42 U.S.C. § 1983 ("Section 1983") for violating his First and

Fourteenth Amendment rights. (Dkt. 28, at 1). More specifically, Reyes alleges that there is evidence

his arrests "constitute an informal custom, pattern, and practice of the City of Austin to arrest him

because of, and in retaliation for, his exercise of" his First Amendment rights. (Dkt. 61, at 1). Reyes

also brought claims under the Privacy Protection Act, ("PPA"), 42 U.S.C. § 2000aa, et seq., for

illegal seizure of his journalist work product and documentary materials. (*Id.* at 23–24; Dkt. 28, at 1).

　　Reyes submits several pieces of evidence that he is known to the police and described as

anti-police in the APD's internal communications. For example:

- As of February 2017, the APD internally labeled him as an "anti-police activist." (Dkt. 61, at 7). More specifically, a police report noted he is listed as "CAUTION/ANTI-POLICE activist." (*Id.*). Other internal records call him a "known Anti-Police subject," "a known anti police advocate," and "a known anti-police activist." (*Id.*).

- When anyone enters Reyes' name into the APD system, it displays as part of his profile that he is an "anti-police activist." (*Id.* at 8). The City of Austin's 30(b)(6) witness acknowledged that this label is seen by City officers, detectives, and supervisors and that the label functions to ensure officers "have an understanding of . . . his stance in regards with law enforcement." (*Id.*).

- An internal analyst at the APD emailed a publication written by Reyes to others in the department and said Reyes "bash[es]" the City of Austin. A sergeant forwarded the same publication to other officers and called Reyes, among others, a "loonie[]" and a "turd[]." (*Id.* at 9.). The sergeant told the other officers: "FYI, everyone pay attention to these loonies. Don't cut them any room while dealing with them. Every time we are weak (the Reyes incident downtown) these turds get a little more brave." (*Id.*).

- Upon review by the county attorney, all of the charges underlying his arrests have been no-billed, dismissed by the prosecuting officer, or resulted in acquittal of Reyes. (*Id.* at 6).

The City of Austin agrees that Reyes has been arrested at least ten times between November 5, 2019, and March 8, 2024, but argues that each time he was arrested for violating the law, not in retaliation for his First Amendment-protected views. (Dkt. 44, at 6).

Out of the arrests alleged, seven are discussed in the briefing on the Motion for Summary Judgment, report and recommendation, and objections. (Dkt. 56, at 9–16). Reyes' account as to each arrest is briefly summarized below.

- **January 4, 2019:** By Reyes' account, he was filming officers removing a group of homeless individuals from the sidewalk, and was verbally criticizing the police officers, along with other members of the public, when he was told to leave and then arrested. (Dkt. 61, at 10).

- **November 5, 2019:** By Reyes' account, he was arrested while protesting Austin's camping ban ordinance when others were present and filming, but not arrested. (*Id.* at 12).

- **June 20, 2020:** By Reyes' account, he was protesting EMS personnel who were forcibly strapping a person in distress into a vehicle when he was arrested; before his arrest, Reyes acknowledges he slapped a police officer. (*Id.* at 13).

- **July 22, 2020:** By Reyes' account, he was protesting on public property as City of Austin personnel conducted a homeless camp sweep. (*Id.* at 14–15). The report and recommendation notes Reyes told the police officers he was placing them "under citizen's arrest," (Dkt. 56, at 13), which he does not dispute. He was then arrested.

- **October 24, 2021**: The report and recommendation finds Reyes was arrested for disorderly conduct in a public park for using a bullhorn for over an hour, with an amplifier and over noise complaints, in violation of Texas Penal Code § 42.01(1)(5), (Dkt. 56 at 14–15). Reyes alleges in his declaration that others were present and making similar noise, but not arrested. (Dkt. 47-1, at 10).

- **December 23, 2023:** By Reyes' account, he was on a public sidewalk filming police officers who had two individuals handcuffed against a car. (Dkt. 61, at 15–16). Reyes says he was told by the officers to move farther away from the police vehicles and then arrested despite complying with the order. (*Id.*).

- **March 8, 2024:** By Reyes' account, he was filming a protest and saw others being arrested. He went up to the officer to ask why, criticized his actions, and shouted at him. The police demanded he walk away, an order with which Reyes alleges he complied. Reyes was arrested, along with others. Reyes alleges that a police officer referenced him by name and said, "Grab Julian, he's going to jail." (*Id.* at 17–18).

Reyes asserts in his amended complaint that he had been repeatedly arrested for his filming from June 2014 to March 2023 and that the "seizures of [his] cameras, videos, and other materials constituted the unlawful seizure of work product materials" and of "documentary materials" violating the PPA. (Dkt. 28, at 5–6). Two examples of such seizure are addressed in the summary judgment briefing: Reyes alleges that the APD took his video equipment in the course of an arrest, on January 4, 2019 and on October 24, 2021. (Dkt. 47, at 26). In the October 24, 2021 incident, Reyes alleges in his amended complaint that he was arrested without probable cause by APD officers, "while exercising his free speech rights on a public sidewalk" and as "a pretext to stop Reyes from recording the police." (Dkt. 28, at 3). He alleges that during this arrest his cameras, "which are his primary work equipment, were seized by APD," and that his cameras "contained work product and documentary materials that he intended to publish to the public." (*Id.*). Reyes alleges in a declaration attached to his summary judgment briefing that his "video included raw footage of police activity reflecting what I considered of interest to film and intended to edit and publish," and that "I was not the only person using a megaphone or filming that day," "[b]ut I was the only one targeted and arrested." (Dkt. 47-1, at 10). On January 4, 2019, Reyes asserts in his declaration,  he "was arrested while recording APD officers using threats and coercion" against homeless individuals and that his "camera was seized by APD officers, despite containing raw footage of APD activities" that he "intend[ed] to publish." (Dkt. 47-1, at 8).

## II. LEGAL STANDARD

### A. Report and Recommendations

The Federal Rules of Civil Procedure authorize magistrate judges to make findings and recommendations for dispositive motions. Fed. R. Civ. P. 72(b)(1). For dispositive motions, parties are entitled to *de novo* review of any part of a magistrate judge's report and recommendation that has been properly objected to. Fed. R. Civ. P. 72(b)(3). A party may serve and file specific, written

objections to a magistrate judge's findings and recommendations within fourteen days after being served with a copy of the report and recommendation and, in doing so, secure *de novo* review by the district court. 28 U.S.C. § 636(b)(1)(C). The district judge has the discretion to "accept, reject, or modify the recommended disposition." *Id.*; *see also* Fed. R. Civ. P. 72(b)(3). Because Reyes objected to the report and recommendation, the Court reviews the report and recommendation *de novo*.

### B. Summary Judgment

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986). "A fact issue is 'material' if its resolution could affect the outcome of the action." *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2021).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *Wise v. E.I. Dupont de Nemours & Co.*, 58 F.3d 193, 195 (5th Cir. 1995). After the nonmovant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted. *Miss. River Basin Alliance v. Westphal,* 230 F.3d 170, 175 (5th Cir. 2000).

### C. Section 1983

Reyes argues that his arrests by APD officers violated his First Amendment right to observe and record police activities and that his arrests were in retaliation for exercising his First

Amendment rights. Reyes argues that the City of Austin is liable for those constitutional violations under 42 U.S.C. § 1983 because they constitute a municipal custom, policy, or practice.

As an initial matter, the City of Austin cannot be liable under Section 1983 unless Reyes' constitutional rights were violated. *Windham v. Harris Cnty., Tex.*, 875 F.3d 229, 243 (5th Cir. 2017) ("We have stated time and again that without an underlying constitutional violation, an essential element of municipal liability is missing.") (quoting *Doe ex rel. Magee v. Covington Cty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 866–67 (5th Cir. 2012)) (cleaned up). The First Amendment protects freedom of speech and freedom of the press, and protects the right to record the police, subject only to reasonable time, place, and manner restrictions. *Turner v. Lt. Driver*, 848 F.3d 678, 688 (5th Cir. 2017).

The First Amendment also generally prohibits government officials from subjecting an individual to retaliatory actions, such as arrest for engaging in protected speech. *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019). A plaintiff bringing a retaliatory arrest claim generally must plead and prove the absence of probable cause for the arrest. *Id.* at 404.[1] There is an exception to this rule if the plaintiff produces "objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Id.* at 407.

The Supreme Court issued an opinion mandating that the Fifth Circuit interpret the *Nieves* exception more widely in June 2024, after the parties submitted their summary judgment briefing. *Gonzalez v. Trevino*, 602 U.S. 653, 658 (2024). As such, the United States Magistrate Judge did not have the benefit of full briefing on the widened *Nieves* exception, an issue the parties addressed in their Objections and responses thereto. (Dkts. 62, 63). In *Gonzalez*, the Supreme Court rejected the

---

[1] In addition, a "plaintiff must show that the retaliation was a substantial or motivating factor behind the [arrest], and, if that showing is made, the defendant can prevail only by showing that the [arrest] would have been initiated without respect to retaliation." *Nieves*, 587 U.S. 391, 404 (citation omitted). The City of Austin did not address the substantial or motivating factor ground in its Motion, so the Court does not address it.

Fifth Circuit's "overly cramped view of *Nieves*." 602 U.S. at 658. It held that the Fifth Circuit erred

when it interpreted *Nieves* as requiring "very specific comparative evidence" of other individuals who

engaged in identical conduct as the plaintiff but were not arrested. *Id.* "[T]he demand for virtually

identical and identifiable comparators goes too far." *Id.* Rather, showing "circumstances where

officers have probable cause to make arrests, but typically exercise their discretion not to do so"

using "objective" evidence sufficed to meet the *Nieves* exception. *Id.*[2] "The only express limit [the

Supreme Court] placed on the sort of evidence a plaintiff may present for that purpose is that it

must be objective" to avoid 'the significant problems that would arise from reviewing police conduct

under a purely subjective standard.'" *Id.* at 653 (quoting *Nieves*, 587 U.S. at 407).

To summarize, to show retaliatory arrest even where probable cause existed, a plaintiff may

produce evidence either of similarly situated individuals who were not arrested, or other objective

evidence that circumstances existed where "officers have probable cause to make arrests, but

typically exercise their discretion not to do so." *Gonzalez*, 602 U.S. at 658; *see also Ballentine v. Tucker*,

28 F.4th 54, 62 (9th Cir. 2022) (evidence of similarly situated individuals who were not arrested

sufficed under *Nieves* exception). By contrast, arrests for aggravated assault charges have been held

to have probable cause with no *Nieves* exception applicable, because officers would routinely exercise

their discretion to make an arrest in circumstances of potential aggravated assault. *See Thomas v.*

*Cassia Cnty.*, 491 F. Supp. 3d 805, 812–138 (D. Idaho 2020), *aff'd*, No. 20-35862, 2022 WL 1223705

(9th Cir. Apr. 26, 2022). Courts have treated threats of physical violence similarly, including after

---

[2] Similarly, the Supreme Court recently confirmed that it had changed the Fifth Circuit's applicable rule when
it granted a petition for certiorari and vacated the Fifth Circuit's ruling in *Villarreal v. City of Laredo*, 94 F.4th
374, 398 (5th Cir. 2024) (en banc). *Villarreal v. Alaniz*, – S.Ct. –, 2024 WL 4486343 (Oct. 15, 2024). In
*Villarreal*, the Fifth Circuit had affirmed the dismissal of Villareal's case because, the court found, the plaintiff
had offered no evidence of similarly situated individuals who were not arrested. *Villarreal*, 94 F.4th at 398.
The Supreme Court remanded for "further consideration in light of *Gonzalez*." *Villarreal*, 2024 WL 4486343.

*Gonzalez. See Morales v. Maxwell*, No. CV 21-07263 (ZNQ) (RLS), 2024 WL 4651757, at *10 (D.N.J. Nov. 1, 2024).

To the second part of the Section 1983 analysis, the existence of a custom, policy, or practice, the Court briefly reiterates the legal standard as correctly described by the United States Magistrate Judge. In *Monell v. New York City Dept. of Social Services*, 436 U.S. 658 (1978), the Supreme Court held that a municipality "can be found liable under Section 1983 only where the municipality *itself* causes the constitutional violation at issue." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989). "Respondeat superior or vicarious liability will not attach under § 1983. It is only when the execution of the government's policy or custom inflicts the injury that the municipality may be held liable under § 1983." *Id.* (cleaned up). As such, to succeed on a Section 1983 claim against the City of Austin, Reyes must establish that (1) the City had an official policy, practice, or custom of unlawfully arresting him for filming police activities, (2) promulgated by a municipal policymaker, (3) that was the moving force behind the constitutional violation. *Monell*, 436 U.S. at 694; *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001).

Official policy establishes culpability and can arise in various forms. It usually exists in the form of written policy statements, ordinances, or regulations, but it may also arise in the form of a widespread practice that is "so common and well-settled as to constitute a custom that fairly represents municipal policy." *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 848 (5th Cir. 2009) (quoting *Webster v. City of Houston,* 735 F.2d 838, 841 (5th Cir. 1984)). A plaintiff can also show a policy or custom in limited circumstances where a municipality fails to train or supervise its police officers which amounts to deliberate indifference or fails to discipline officers for committing constitutional violations that amounts to ratification of a policy. *Id.*

**D. Privacy Protection Act Claim**

The Court also reiterates the legal standard for the claim under the PPA as correctly described by the United States Magistrate Judge. The PPA "generally prohibits government officials from searching for and seizing documentary materials possessed by a person in connection with a purpose to disseminate information to the public." *Citicasters v. McCaskill*, 89 F.3d 1350, 1353 (8th Cir. 1996). Congress passed the PPA in response to *Zurcher v. Stanford Daily*, 436 U.S. 547, 567–68 (1978), in which the Supreme Court held that the Fourth Amendment does not prohibit the search of a newspaper office for photographs revealing the identities of individuals who assaulted police officers during a demonstration, even though no one employed by the newspaper was suspected of involvement. *See Guest v. Leis*, 255 F.3d 325, 340 (6th Cir. 2001) ("[T]he PPA was enacted to afford the press and certain other persons not suspected of committing a crime with protections not provided currently by the Fourth Amendment."). First, the PPA provides that "it shall be unlawful for a government officer or employee, in connection with the investigation or prosecution of a criminal offense, to search for or seize any work product materials possessed by a person reasonably believed to have a purpose to disseminate to the public a newspaper, book, broadcast, or other similar form of public communication, in or affecting interstate or foreign commerce." 42 U.S.C. § 2000aa(a). "Work product materials" include those "prepared, produced, authored, or created" "in anticipation of communicating such materials to the public" that are possessed for that purpose and include "mental impressions, conclusions, opinions, or theories" of the person who prepared them. 42 U.S.C. § 2000aa-7(b). Second, the PPA provides that "it shall be unlawful for a government officer or employee, in connection with the investigation or prosecution of a criminal offense, to search for or seize documentary materials, other than work product materials, possessed by a person in connection with a purpose to disseminate to the public a newspaper, book, broadcast, or other similar form of public communication, in or affecting interstate or foreign commerce. 42 U.S.C. §

2000aa(b). "[D]ocumentary materials" include "written or printed materials, photographs, motion picture films, negatives, video tapes, audio tapes, and other mechanically, magnetically or electronically recorded cards, tapes, or discs." 42 U.S.C. § 2000aa-7(a).

The PPA "carves out various exceptions to the prohibition against searches and seizures of materials intended for public dissemination." *Sennett v. United States*, 667 F.3d 531, 535 (4th Cir. 2012). Under the "suspect exception," the police can avoid the constraints of the PPA "when the person possessing the materials is a criminal suspect, rather than an innocent third party." *Id.* (cleaned up). For the government to take advantage of that exception, there must be "probable cause to believe that the person possessing such materials has committed or is committing the criminal offense to which the materials relate." 42 U.S.C. § 2000aa(a)(1) & (b)(1). The materials exempted under the suspect exception "must relate to the offense." *Guest*, 255 F.3d at 341.

Section 2000aa-6 of the PPA creates a private right of action for damages resulting from a search or seizure of materials that violates the statute. 42 U.S.C. § 2000aa-6(a). A "person aggrieved" by such an unlawful search or seizure may bring suit "against the United States, against a State which has waived its sovereign immunity under the Constitution to a claim for damages resulting from a violation of this chapter, or against any other governmental unit." *Id.*

### III. DISCUSSION

### A. Section 1983 Claim

After reviewing Reyes' objections as to each arrest *de novo*, the Court finds that a factfinder could reasonably conclude that the City of Austin arrested him without probable cause or where the *Nieves* exception applies, in some instances, but that Reyes has not met his burden to show a material existence of fact as to a custom, policy, or practice of First Amendment violations, as is required. As such, the Court will grant summary judgment to the City of Austin as to Reyes' Section 1983 claim.

1. First Amendment Violation

As an initial matter, Reyes must show that his arrests violated the First Amendment to prove his Section 1983 claim. Reyes provides evidence of several arrests where he alleges that either (1) there was no probable cause, as supports a finding of retaliatory arrest, or, (2) the *Nieves* exception applies, because other similarly situated individuals were not arrested or based on other evidence. Taking each arrest in turn, the Court finds that Reyes met his burden to show a disputed material fact as to some, but not all, of his arrests. As such, the Court will modify the report and recommendation to find the existence of a material dispute of fact as to the violation of his First Amendment rights in these instances. The Court notes, again, that these issues were not fully briefed for the Court until the Objections to the report and recommendation.

On January 4, 2019, Reyes presents evidence, including a video and affidavit, that probable cause did not exist because he was verbally criticizing the officers' conduct but not otherwise interfering with their work. (Dkt. 47, at 9–10; Dkt. 61, at 10); *see Freeman v. Gore*, 483 F.3d 404, 413–14 (5th Cir. 2007) ("yelling and screaming" at police officers does not constitute probable cause for arresting an individual for interference with public duties); *City of Houston v. Hill*, 482 U.S. 451, 461 (1987) ("The freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state."); *Pulliam v. Fort Bend Cnty., Tex.*, No. 4:22-CV-04210, 2024 WL 4068767, at *11 (S.D. Tex. Sept. 5, 2024) ("Cases where courts find probable cause for interference-with-public-duties arrests usually involve some sort of physical obstruction by the arrestee."). A factfinder could infer from the evidence submitted that Reyes was arrested without probable cause and the arrest was retaliatory.[3]

---

[3] The Court adopts the finding of the United States Magistrate Judge that the City of Austin has waived the affirmative defense, (Dkt. 44, at 12 (citing TEX. CIV. PRAC. & REM. CODE § 16.003(a))), that Reyes' arrests before November 5, 2019 are barred by the Texas statute of limitations for personal injury claims,

On November 5, 2019, too, Reyes argues that he was arrested while filming police when others were present and behaving similarly. Reyes cites several pieces of summary evidence in his objections, including a police report and an email highlighting Reyes' arrest specifically and noting that others present were not arrested, as well as his own affidavit describing the scene. (Dkt. 61, at 12). Here, the Court finds that Reyes has met his burden to show a material dispute of fact as to whether the arrest was retaliatory—a reasonable factfinder could infer that because others present at the scene were not arrested, and because the APD police characterized Reyes alone in subsequent documents as an activist, the *Nieves* exception applies, and the arrest was retaliatory. *See Ballentine*, 28 F.4th at 62.

Also, the report and recommendation addresses Reyes' arrest on October 24, 2021 and finds that Reyes was arrested with probable cause for violating a city noise ordinance. (Dkt. 56, at 14–15). The report and recommendation found that Reyes neither showed the police officers lacked probable cause for arresting him, nor provided evidence that others similarly situated were not arrested. (Dkt. 56, at 15). Reyes did not submit an objection on this point. Reyes alleges in his declaration, (Dkt. 47-1, at 5), however, that others were also using a megaphone but not arrested, as would support the application of the *Nieves* exception.

Next, on December 23, 2023, Reyes argues he was arrested while on a public sidewalk, where he was filming police from a considerable distance and not interfering with their activities. (Dkt. 61, at 14–15). Reyes cites summary evidence which could be found to show that there was either no probable cause or the *Nieves* exception applies. He argues that two other pedestrians are

---

because the City did not plead this defense in its Answer. Rule 8(c) requires: "In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense, including . . . statute of limitations." If the affirmative defense of a statute of limitations is not included in the answer, it is waived. *Davis v. Huskipower Outdoor Equip. Corp.*, 936 F.2d 193, 198 (5th Cir. 1991). Once the defendant has waived that defense, it cannot revive it in a memorandum in support of a motion for summary judgment. *Funding Sys. Leasing Corp. v. Pugh*, 530 F.2d 91, 96 (5th Cir. 1976).

seen in the video walking closer to the police but were not arrested, that the particular officer who arrested him had received an email from an APD Sergeant calling Reyes a "turd" and urging officers not to be "weak" with him, and that the officer had also been the subject of prior reprimands for acting partially toward suspects. (Dkt. 61, at 16). Taking all inferences in the light most favorable to Reyes, a reasonable factfinder may conclude that there was a retaliatory arrest.

Finally, on March 8, 2024, Reyes alleges he was filming APD officers conducting an arrest and asked officers why the arrest was happening; that officers asked him to walk away and move onto the sidewalk, which he did; and then he was arrested. (Dkt. 61, at 17–18). Reyes argues, citing video evidence, that the officers lacked probable cause for his arrest because he was on the sidewalk as the officer requested at the time of his arrest. (*Id.*). Reyes also alleges that the officers on the scene knew him by name. (*Id.*). The Court finds that a factfinder could reasonably conclude no probable cause existed for this arrest, and even if a factfinder concluded probable cause existed for his arrest, it could also conclude that Reyes was arrested when others on the scene were not arrested, as would warrant application of the *Nieves* exception and a finding of retaliatory arrest. (*Id.*).

As such, a reasonable factfinder could find that in five instances, APD officers arrested Reyes in retaliation for First Amendment protected activities. Reyes does not provide a material dispute of facts as to all arrests, however, and the Court adopts the recommendation of the United States Magistrate Judge as to all other arrests not described above.

First, Reyes brings forth summary judgment evidence about two more arrests in his briefing and Objections, but he does not meet his burden to show a dispute as to the existence of a First Amendment violation as to either instance. On June 20, 2020, Reyes was arrested, but he concedes that he hit a police officer before being arrested. (Dkt. 61, at 13 (Reyes agrees he "slapped the officer's arm away")). Assault constitutes probable cause to arrest someone, and nothing in the record suggests an officer would typically exercise their discretion to not arrest someone in the case

13

of assault, so Reyes has not provided evidence that creates a material dispute of fact as to this arrest. *Cf. Thomas*, 491 F. Supp. 3d at 812 (aggravated assault constituted probable cause for purposes of retaliatory arrest and *Nieves* exception did not apply because officers routinely arrest people for assault). So too, on July 22, 2020, Reyes does not dispute that he told an officer he was placing him "under citizen's arrest" while protesting an officer's actions. (Dkt. 56, at 13). Reyes does not cite evidence tending to show that an officer would typically exercise their discretion to not arrest someone in similar circumstances. In other words, a person could assault another person or threaten to do so while filming, shouting their political views, or otherwise expressing their First Amendment rights, and even when taking a wide view of the *Nieves* exception, it cannot be reasonably said that the police arresting someone for assault, or interference with public duties where an individual has made threats of physical violence, is in retaliation for their protected First Amendment activity.

Finally, while Reyes references over thirteen arrests, (Dkt. 28, at 3), Reyes only discusses seven arrests in his response brief to the Motion for Summary Judgment and Objections and does not provide evidence tending to show the existence of a First Amendment violation as to any other arrest. (Dkt. 56, at 9). The Court adopts the report and recommendation and finds no material dispute of fact as to any other arrests as a result.

### 2. Existence of Official Policy, Practice, or Custom

Reyes having demonstrated a material dispute of fact as to whether his First Amendment rights were violated on a maximum of five instances, the Court's analysis now proceeds to whether the City of Austin violated his First Amendment rights by way of a policy, custom, or practice. *Peterson*, 588 F.3d at 848. The Court finds that Reyes has not demonstrated a material dispute of fact as to the existence of such a policy, custom, or practice and adopts the report and recommendation of the United States Magistrate Judge to grant summary judgment to the City of Austin on the Section 1983 claim.

The Court credits the analysis of the United States Magistrate Judge on this point and responds to Reyes' objections. Reyes acknowledges that there is no official written or otherwise specifically articulated policy on which he can rely. As the City emphasizes, it has a written policy that "its officers shall not arrest people for or otherwise prevent people from recording police activity." (Dkt. 44. at 2). Given the lack of an official or written policy violating his rights, Reyes advances two alternate theories of municipal liability. First, Reyes alleges that his repeated arrests by APD officers while he was filming police activity were part of a "persistent pattern of illegal conduct" that was so common and well-known to policymakers that it constitutes a custom that fairly represents official policy. (Dkt. 47, at 18). Second, he also alleges the City is liable because it ratified the illegal conduct by failing to discipline the APD officers involved in his arrests. (*Id*).

To Reyes' first argument, the existence of a pattern, the Court finds that he has not alleged so many instances that a reasonable jury could find City of Austin liable based on the existence of a persistent pattern. "A pattern is tantamount to official policy when it is so common and well-settled as to constitute a custom that fairly represents municipal policy." *Peterson*, 588 F.3d at 850 (quoting *Webster*, 735 F.2d at 841). When prior incidents are used to prove a pattern, they "must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees." *Id.* (quoting *Webster*, 735 F.2d at 842). "It is thus clear that a plaintiff must demonstrate a pattern of abuses that transcends the error made in a single case." *Id.* at 850–51 (quoting *Piotrowski*, 237 F.3d at 582)).

A pattern also requires "sufficiently numerous prior incidents," as opposed to "isolated instances." *McConney v. City of Houston*, 863 F.2d 1180, 1184 (5th Cir.1989). In *Pineda v. City of Houston*, 291 F.3d 325 (5th Cir. 2002), eleven incidents of warrantless entry did not support a pattern of unconstitutional warrantless entry. Rather, "[e]leven incidents each ultimately offering equivocal

evidence of compliance with the Fourth Amendment cannot support a pattern of illegality in one of the Nation's largest cities and police forces." *Id.* at 329. Similarly, "27 incidents of excessive force over a period of four years do not reflect a pattern that can be said to represent official policy of condoning excessive force so as to hold the City liable for the acts of its employees' unconstitutional conduct. To hold otherwise would be effectively to hold the City liable on the theory of respondeat superior, which is expressly prohibited by *Monell*." *Peterson*, 588 F.3d at 852. Similarly, three incidents over the course of three-and-a-half years were found in *Davidson v. City of Stafford, Texas* insufficient to constitute a pattern as would support *Monell* liability. 848 F.3d 384, at 397 (5th Cir. 2017).

As described above, Reyes has produced summary evidence to show a material dispute of fact as to the existence of a First Amendment violation in a maximum of five instances. The Court notes that *Pineda* and *Peterson* are not directly applicable, as they refer to a city-wide set of incidents instead of incidents as to a specific individual. But Reyes also has not produced authority showing that a pattern existed showing the City has a policy to arrest him in retaliation to his views. *See Shepherd v. Dallas Cnty.*, 591 F.3d 445, 452 (5th Cir. 2009) ("Proving a pattern is a heavy burden, one that has rarely been met in our caselaw."); *see also Sanchez v. Young Cnty.*, 956 F.3d 785, 793 (5th Cir. 2020) ("Showing a pervasive pattern is a heavy burden."). If twenty-seven incidents in *Peterson* and eleven in *Pineda* were insufficient to show a pattern of First Amendment violations, the Court finds that five alleged violations—even if all were found to reflect a First Amendment violation—as to Reyes cannot demonstrate repetition so pervasive within the entire City of Austin as to create a pattern. Rather, Reyes has shown the existence of potential "isolated instances" that cannot give rise to municipal liability. *McConney*, 863 F.2d at 1184.

Reyes also does not give examples of the City of Austin having a practice persistent and widespread *beyond* his case, as would support a showing of a custom, policy, or practice of First Amendment retaliatory arrest. "To plead a practice 'so persistent and widespread as to practically

have the force of law,' a plaintiff must do more than describe the incident that gave rise to his injury." *Peña v. City of Rio Grande City*, 879 F.3d 613, 622 (5th Cir. 2018) (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)); *see also Piotrowski*, 237 F.3d at 582 ("As is the case with allegations of failure to adequately screen prospective police officers, it is nearly impossible to impute lax disciplinary policy to the City without showing a pattern of abuses that transcends the error made in a single case."); *Barkai v. Nuendorf*, No. 21-CV-4060 (KMK), 2023 WL 2691712, at *35 (S.D.N.Y. Mar. 29, 2023) ("Plaintiff does not point to any instance of Rockland County allegedly implementing this widespread practice beyond his own case. This alone would be fatal to Plaintiff's *Monell* claim, even if he had asserted a viable underlying Constitutional violation.").

In his Objections, Reyes reiterates evidence of the City of Austin's internal labelling of him in its system, police reports, and emails as "anti-police," and shows that the APD officers can see that labelling widely. (Dkt. 61, at 6–9). But Reyes does not cite any authority showing that an internal labelling of an individual as having anti-police views, or emails criticizing a person's actions and warning other officers about an individual, create a custom, policy, or practice of retaliatory arrest as would incur liability to the City of Austin under *Monell*. The evidence Reyes brings forward shows that the APD was critical of him and labelled him anti-police, and that some officers described him to others using inappropriate language, but the evidence does not create a reasonable inference that the APD had a widespread policy or custom of arresting him or others in retaliation for his views. For those reasons, the Court finds that Reyes does not show a persistent pattern of conduct that gives rise to a City of Austin custom, practice, or policy.

To support his ratification theory, Reyes argues that the City had a policy of making illegal arrests of individuals who film police activity because the City did not discipline the officers involved in his arrests. "[I]f the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final."

*Peterson*, 588 F.3d at 848 (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)). But Fifth

Circuit "precedent has limited the theory of ratification to 'extreme factual situations.'" *Id.* (quoting

*Snyder v. Trepagnier*, 142 F.3d 781, 798 (5th Cir. 1998); *see also Davidson*, 848 F.3d at 395 (quoting

*Peterson*, 588 F.3d at 848). Here, the underlying conduct by the officers involved in Reyes' arrests was

insufficiently extreme for a finding of ratification. *Compare Grandstaff v. City of Borger*, 767 F.2d 161

(5th Cir. 1985) (finding reasonable inference of ratification after reckless use of deadly force against

innocent individual, where "the evidence prove[d] repeated acts of abuse" "by several officers in

several episodes, tending to prove a disposition to disregard human life and safety so prevalent as to

be police policy or custom"), with *Davidson*, 848 F.3d at 395–96 (finding that arresting abortion

protester without probable cause "while unconstitutional, was not sufficiently extreme to qualify for

a finding of ratification"). Also, a policymaker who defends conduct that is later shown to be

unlawful does not necessarily ratify that conduct as would incur *Monell* liability. *Peterson*, 588 F.3d at

848; *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 169 (5th Cir. 2010) (no ratification when a

municipality defended the constitutionality and propriety of its officers' actions despite the court's

later determination that the officers' actions violated the Fourth Amendment). Reyes relies on

30(b)(6) testimony from the City of Austin stating that the arrests were consistent with their policy,

(Dkt. 61, at 20), but consistent with the Fifth Circuit's holding in *Zarnow* and *Peterson*, a municipality

defending the constitutionality of its officers' actions in litigation does not itself constitute

"ratification." *Peterson*, 588 F.3d at 848; *Zarnow*, 614 F.3d at 171; *see also Davidson*, 848 F.3d at 397.

For those reasons, the Court finds that Reyes does not show a persistent pattern of conduct

or ratification that gives rise to a City of Austin unwritten custom, practice, or policy. Because the

Court finds that Reyes has not shown a material dispute of fact as to the existence of a policy,

custom, or practice in the City of Austin, it need not consider the moving force factor. *Zarnow*, 614

F.3d at 171.

Finally, the report and recommendation found that even if Reyes established all other elements of municipal liability, he identifies no municipal policymaker who could be held responsible, through actual or constructive knowledge, for enforcing an unconstitutional policy, as is required. *Piotrowski*, 237 F.3d at 579 ("This is not an opaque requirement: several Supreme Court cases have discussed the policymaker criterion for municipal liability."). Reyes objects to the report and recommendation on the grounds that the United States Magistrate Judge should not have recommended the grant of summary judgment on this basis, because the Court did not give the Reyes notice that it would consider this ground *sua sponte*. (Dkt. 61 at 4 (citing Fed. R. Civ. P. 56(f)(3) ("After giving notice and a reasonable time to respond, the court may: … consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute." (emphasis added))). However, upon submitting his timely objection to the report and recommendations, Reyes had notice that the Court was considering this ground, and a reasonable time to respond, but still did not cite evidence of a municipal policymaker responsible for the City's policy and practice of arresting him in his objections. The Court adopts the report and recommendations of the United States Magistrate Judge on this point because Reyes, having been given notice through the report and recommendations, still has not identified a municipal policymaker responsible for his labelling as anti-police or the differential treatment by policy he alleges.

For the foregoing reasons, the Court will adopt the recommendation of the United States Magistrate Judge as to the lack of a custom, policy, or practice of violating Reyes' First Amendment rights. The Court will grant summary judgment to the City of Austin on Reyes' Section 1983 claim.

## A. Privacy Protection Act Claim

Upon *de novo* review, the Court will reject the report and recommendation and deny summary judgment as to the PPA claim. As set forth above, the PPA "generally prohibits

government officials from searching for and seizing documentary materials possessed by a person in connection with a purpose to disseminate information to the public." *Citicasters*, 89 F.3d at 1353. To prevail on a claim of unlawful seizure of work product and documentary materials, Reyes must show that (1) he was a person reasonably believed to have a purpose to disseminate to the public one of the eligible forms of public communication, in or affecting interstate or foreign commerce, and (2) that there was no probable cause to believe he had committed an offense to which the materials relate. 42 U.S.C. §2000aa.

The Court finds that Reyes has met his burden to show that a reasonable jury could find that the APD officers "reasonably believed" him to have a purpose to disseminate to the public a form of public communication. As Reyes pointed out in his Objections, a person need not be an identified member of the press for their materials to be protected under the PPA, nor does a person with those materials need to be a journalist in a traditional sense. Rather, other electronic mediums designated for public communication can be protected by the PPA. *See Steve Jackson Games, Inc. v. U.S. Secret Service*, 816 F. Supp. 432, 437–38 (W.D. Tex. 1993) (role playing game books protected from seizure under PPA). So too, record evidence could be found to show that Reyes was actively filming when the police arrested him, such that they were aware he was filming. *See Garcia v. Montgomery County, Md.*, 145 F. Supp. 3d 492, 524-25 (D. Maryland 2015) (denying summary judgment on PPA claim where journalist identified himself as a member of the press, as would "support the reasonable belief that [he] intended to disseminate his recording to the public"). Finally, Reyes has also met his burden to show a material dispute of fact as to whether the APD officers he encountered reasonably believed him to be a member of the press, for instance, because his APD internal profile shows that he is a local activist and works with the Challenger Street Newspaper, and is widely available to police. (Dkt. 61, at 8). Based on Reyes' evidence that he was filming at the time his camera was seized, and the knowledge within APD of his general status as an

activist and citizen journalist who records and disseminates videos of the APD, the Court finds a reasonable factfinder could conclude the PPA applied in his case.

On the other hand, citing a police report, the City of Austin claims it did not seize Reyes' documentary materials on this date. (Dkt. 50, at 5). So, the existence of a seizure on January 4, 2019 violating the PPA is a fact in dispute based on the summary judgment briefing.

The Court next turns to the existence of probable cause for the arrests as would support the suspect exception to the PPA. The Court also finds that, for the reasons described above, whether the City had probable cause to arrest Reyes on January 4, 2019 is a fact in dispute because Reyes has cited summary evidence that he was not interfering with public duties as the City of Austin alleges, but was rather only verbally criticizing them. *See Freeman*, 483 F.3d 404, 414 (5th Cir. 2007) (yelling at or verbally criticizing at a police officer does not constitute probable cause to arrest for interference with public duties); *Gorsky v. Guajardo*, No. 20-20084, 2023 WL 3690429, at *8 n.16 (5th Cir. 2023) ("[M]erely arguing with police officers about the propriety of their conduct . . . falls within the speech exception to [Texas interference with public duties statute] and thus does not constitute probable cause to arrest someone for interference"); *Pulliam*, 2024 WL 4068767, at *11 (S.D. Tex. Sept. 5, 2024) (probable cause for interference-with-public-duties arrests typically involve some sort of physical obstruction by the arrestee) (collecting cases).

As to the October 24, 2021 arrest and seizure of Reyes' materials he alleges occurred on that date, that seizure falls within the suspect exception, because probable cause existed for his arrest on that date. The report and recommendation found that Reyes was arrested with probable cause for violating Texas Penal Code § 42.01(1)(5), which prohibits individuals from intentionally or knowingly making "unreasonable noise in a public place." Reyes alleges that others were not arrested who were also making noise, (Dkt. 47-1, at 5), but has not provided evidence showing that he was arrested on October 24, 2021 without probable cause for violating a noise ordinance. Similarly, the

suspect exception to the PPA has been held to apply where the government showed probable cause that a journalist was involved in acts of vandalism, to which the photographic equipment seized was related. *See Sennett*, 667 F.3d at 536.

For the foregoing reasons, as to the January 4, 2019 seizure of documentary materials, the Court finds that Reyes has shown a material dispute of fact as to whether there was a violation of the PPA. As discussed above, Reyes submits summary evidence that he was arrested without probable cause on that date, and that his materials were seized; the City of Austin rebuts this evidence. A reasonable factfinder could find that the police knew he was filming when he was arrested and may have reasonably believed he would disseminate the materials to the public, as would violate the PPA, and that the suspect exception did not apply. *Citicasters*, 89 F.3d at 1353. Finally, the Court also does not find that the PPA claim as to January 4, 2019 was waived, (Dkt. 56, at 25), because Reyes' amended complaint included the claim of a Privacy Protection Act violation and alleged incidents on multiple occasions over a time period including 2019, (Dkt. 28, at 3, 5–6), as was required to plead his PPA claim. The City of Austin also did not argue in its Motion or reply that Reyes waived the PPA claim as to a seizure on January 4, 2019. (Dkts. 44, 50).

For those reasons, the existence of a PPA violation on January 4, 2019 is an issue appropriate for resolution at trial.

## IV. CONCLUSION

For the reasons given above, **IT IS ORDERED** that the City of Austin's Motion for Summary Judgment is **DENIED** as to the existence of a Privacy Protection Act violation on January 4, 2019 and **GRANTED** as to all other claims.

**SIGNED** on December 12, 2024.

_____

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE