IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JULIAN REYES, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 1:21-CV-992-RP |
| | § | |
| CITY OF AUSTIN, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

On January 13, 2025, the Court held a bench trial in this matter. (Dkt. 77). Plaintiff Julian Reyes ("Reyes") and Defendant the City of Austin (the "City") submitted post-trial proposed findings of fact and conclusions of law. (Def.'s Proposed Findings of Fact, Dkt. 88; Pl.'s Proposed Findings of Fact, Dkt. 89). Also before the Court is the City's Motion for Judgment as a Matter of Law. (Dkt. 76). Reyes filed a response, (Dkt. 81), to which the City replied, (Dkt. 86). Having considered the evidence and testimony presented at trial, the arguments of counsel, the briefing, and the governing law, the Court enters the following findings of fact and conclusions of law.

**I. BACKGROUND**

Reyes is a citizen journalist and advocate for homeless Austin residents. Reyes has frequently filmed police activity and several times has been arrested by the Austin Police Department ("APD"). Reyes brought claims under the Privacy Protection Act, ("PPA"), 42 U.S.C. § 2000aa *et seq.*, for seizure of his journalist work product and documentary materials during those arrests. After the Court resolved Reyes's other claims in its Summary Judgment order,[1] (Order, Dkt. 68), the trial

---

[1] Reyes brought constitutional claims under Section 1983 alleging a pattern or practice by the City of arresting him in retaliation for his views. The Court granted summary judgment to the City on that claim because, while it was possible that a jury could reasonably find he was arrested in retaliation for his views in a maximum of five isolated instances, he had not met his burden to provide evidence from which a reasonable factfinder could infer a policy, custom, or practice of the City existed, and had rather only demonstrated

1

addressed Reyes's arrest on January 4, 2019, and the APD's seizure of his camera following the arrest. Prior to his arrest, Reyes was filming and verbally criticizing officers who were telling a group of homeless individuals to leave the sidewalk. Reyes was told to leave and subsequently arrested. Reyes's camera contained raw footage of APD activities that he intended to, and ultimately did, publish. As set out in the analysis below, Reyes has proven a PPA violation based on the evidence admitted at trial.

## II. SUMMARY OF THE EVIDENCE

Reyes has lived in Austin for about 20 years. (Tr. 20:20−21). For at least twelve years, Reyes has been publishing videos, articles, and other written work in various outlets on the internet for public reading and viewing. (Tr. 23:18–24:3; 24:18–25:8; 26:9–24). Reyes began working as a journalist around 2000, when he joined The Austin Advocate. (Tr. 26:11−12). He joined The Challenger Street Newspaper around 2013. (Tr. 25:5−8). Reyes's work has been published on The Challenger Street Newspaper's website. (Tr. 25:20−21). He films Sixth Street activities, protests, and City of Austin homeless sweeps. (Tr. 23:13−17). He publishes his videos on a personal YouTube channel and Facebook account. (Tr. 23:18−23). He has posted over 700 videos, which have received over 300,000 views. (Tr. 24:1−3). When filming, Reyes wears a press ID that says he is a member of the press for The Challenger newspaper. (Tr. 27:15−17). After an APD officer shot and killed his dog Shiner in 2013, Reyes began recording police activities and publishing his videos online for public viewing. (Tr. 21:8−12, 22:1−23:1, 23:24−25). He has also become an advocate for the

---

isolated instances, which cannot support a finding of municipal liability on the part of the City. (Order, Dkt. 68, at 14−22).

As to his PPA claims, Reyes mentioned several arrests in his Amended Complaint during which his camera was seized and addressed two in summary judgment briefing. (*Id.* at 4). In its summary judgment order, the Court found that his arrest on October 24, 2021, did not violate the PPA because the City had probable cause to arrest Reyes for violating a noise ordinance, and because Reyes did not rebut the probable cause finding in his objections to the report and recommendation of the United States Magistrate Judge. (*Id.* at 21). Trial proceeded as to the issue of a PPA violation on one date, January 4, 2019.

2

homeless, recording police interactions with homeless individuals in an effort to keep police officers accountable and their activities transparent to public view. (Tr. 23:2–17, 24:18–25:3). He has worked with police accountability organizations Peaceful Streets Project, Housing Not Handcuffs, and Stop the Sweeps. (Tr. 22:20–23:9). He has experienced homelessness himself. (Tr. 23:10–12).

The Court heard testimony from Reyes, Officer Corey Hale ("Hale"), and Officer Gadiel Alas ("Alas") at trial. The Court also admitted documentary evidence including the police report about Reyes's arrest, (Dkt. 79-8), and a video Reyes took during the encounter, (Pl.'s Ex. 10). The Court finds the following facts about the events of January 4, 2019.

Reyes approached a scene where APD officers were confronting a group of individuals who they claim were violating the City's "no sit, lie, or camp" ordinance. (*See id.* at 7:05; Tr. 72:12–23). The video evidence shows that the individuals being confronted by APD officers were agitated and expressing their frustrations with their situation, asking the APD officers where they were supposed to go if they could not stay on that sidewalk. (Pl.'s Ex. 10 at 9:00, 10:38–50). While filming, Reyes read the officers' names and badge numbers to himself for documentation. (*Id.* at 8:10, 8:20). After documenting the group and arguing with the officers about whether they were violating the ordinance, Reyes began expressing his own views. (*Id.* at 9:33). As Reyes spoke, Alas continued to interact with the individuals and fill out his citation book. (*Id.* at 11:00). Reyes approached Hale to learn his name. (*Id.* at 11:40). Hale told Reyes to step back, and Reyes complied. (*Id.* at 11:44). Hale did not give Reyes any further instructions or claim Reyes was interfering with anyone's duties. (*Id.* at 12:15). Reyes sat down in a location that did not impede the officers' access to the individuals and continued filming. (*Id.* at 13:00). Thirty seconds later, Alas approached Reyes and told him to stand up. (*Id.* at 13:30). Reyes demurred. (*Id.* at 13:32). Alas continued to write a citation, unobstructed by Reyes. (*Id.* at 13:40). Reyes remained seated. (*Id.* at 13:50).

3

Reyes continued to verbally criticize the officers' actions. (*Id.* at 13:55). Reyes declared that the officers, not the individuals, were "breaking the law." (*Id.* at 13:57). Alas then told Reyes he was "interfering." (*Id.* at 13:58). Reyes told Alas that he was "not physically doing anything," and Alas told Reyes to move to "where the crack is" and to "stand right over there." (*Id.* at 14:03). He did not tell Reyes that he was in a crime scene. (*Id.*). He told Reyes he was "riling up" the group. (*Id.* at 14:31). Alas then arrested Reyes. (*Id.* at 14:40). Alas did not give Reyes clear warnings with time to respond but rather arrested him very shortly after claiming that he was "interfering" by "riling them up" with his words. (*Id.* at 14:38). About 40 seconds elapsed from the time Alas told Reyes that he was "interfering" and telling him he was under arrest. (*Id.* at 13:58–14:40).

Alas arrested Reyes for allegedly "riling up" the citizens, (Tr. 93:6−13; Dkt. 79-8, at 3), even though, as noted above, the citizens were already agitated by the situation when Reyes approached, (Tr. 33:1–6). Any "riling up" was through Reyes's speech alone and did not involve, for example, any incitement, instruction to disobey a police order, or physical obstruction by Reyes. (Tr. 88:8–11, 9−21). The evidence at trial demonstrates that Reyes did not obstruct Alas or Hale from carrying out their official duties and did not instruct anyone else to obstruct or disobey the officers.

### III. DISCUSSION

#### A. Legal Standard

The PPA "generally prohibits government officials from searching for and seizing documentary materials possessed by a person in connection with a purpose to disseminate information to the public." *Citicasters v. McCaskill*, 89 F.3d 1350, 1353 (8th Cir. 1996). Congress passed the PPA in response to *Zurcher v. Stanford Daily*, 436 U.S. 547 (1978), in which the Supreme Court held that the Fourth Amendment does not prohibit the search of a newspaper office for photographs revealing the identities of individuals who assaulted police officers during a demonstration, even though no one employed by the newspaper was suspected of involvement. *See*

4

*Guest v. Leis*, 255 F.3d 325, 340 (6th Cir. 2001) ("[T]he PPA was enacted to afford the press and certain other persons not suspected of committing a crime with protections not provided currently by the Fourth Amendment." (internal quotation marks and citation omitted)).

First, the PPA provides that "it shall be unlawful for a government officer or employee, in connection with the investigation or prosecution of a criminal offense, to search for or seize any work product materials possessed by a person reasonably believed to have a purpose to disseminate to the public a newspaper, book, broadcast, or other similar form of public communication, in or affecting interstate or foreign commerce." 42 U.S.C. § 2000aa(a). "Work product materials" include those "prepared, produced, authored, or created" "in anticipation of communicating such materials to the public" that are possessed for that purpose and include "mental impressions, conclusions, opinions, or theories" of the person who prepared them. 42 U.S.C. § 2000aa-7(b).

Second, the PPA provides that "it shall be unlawful for a government officer or employee, in connection with the investigation or prosecution of a criminal offense, to search for or seize documentary materials, other than work product materials, possessed by a person in connection with a purpose to disseminate to the public a newspaper, book, broadcast, or other similar form of public communication, in or affecting interstate or foreign commerce." 42 U.S.C. § 2000aa(b). "[D]ocumentary materials" include "written or printed materials, photographs, motion picture films, negatives, video tapes, audio tapes, and other mechanically, magnetically or electronically recorded cards, tapes, or discs." 42 U.S.C. § 2000aa-7(a).

The PPA "carves out various exceptions to the prohibition against searches and seizures of materials intended for public dissemination." *Sennett v. United States*, 667 F.3d 531, 535 (4th Cir. 2012). Under the "suspect exception," a government officer or employee can seize otherwise-protected materials "when the person possessing the materials is a criminal suspect, rather than an innocent third party." *Id.* (cleaned up). For the exception to apply, there must be "probable cause to

5

believe that the person possessing such materials has committed or is committing the criminal offense to which the materials relate." 42 U.S.C. § 2000aa(a)(1), (b)(1). The materials exempted under the suspect exception "must relate to the offense and the offense must not involve the communication of the materials." *Guest*, 255 F.3d at 341.

Section 2000aa-6 of the PPA creates a private right of action for damages resulting from a search or seizure of materials that violates the statute. 42 U.S.C. § 2000aa-6(a). A "person aggrieved" by such an unlawful search or seizure may bring suit "against the United States, against a State which has waived its sovereign immunity under the Constitution to a claim resulting from a violation of this chapter, or against any other governmental unit." *Id.* "A person having a cause of action under this section shall be entitled to recover actual damages but not less than liquidated damages of $1,000, and such reasonable attorneys' fees and other litigation costs reasonably incurred." 42 U.S.C. § 2000aa-6(f).

### B. Reyes's PPA Claim

The City seized, by arresting Reyes and taking possession of his person and the things he was carrying, two cameras Reyes was using to film police interaction with citizens. Those cameras contained video images and sound recordings that Reyes possessed with the purpose of disseminating on YouTube, a public communication in or affecting interstate or foreign commerce. The seized video images and sound recordings were not contraband, the fruits of a crime, or otherwise criminally possessed, nor were they property designed or intended for use, or used as, the means of committing a criminal offense. The City therefore seized Reyes's documentary materials as defined in 42 U.S.C. § 2000aa(a). The Court turns to each element of a PPA claim, which, as described above, include showing (1) seizure; of (2) documentary or work product materials; without (3) "probable cause to believe that the person possessing such materials has committed or is committing the criminal offense to which the materials relate." § 2000aa(a), (b).

1. Seizure

The Court finds that the City "seized" Reyes's cameras and the videos they contained, within the meaning of the PPA, when he was arrested on January 4, 2019, because the APD officers took control of the cameras and took them away from Reyes to check them in with Travis County upon his arrest. (*See* Tr. 68:25–69:14). The City does not contest that a seizure occurred within the meaning of the statute. (*See* Def.'s Proposed Findings of Fact, Dkt. 88).

2. Documentary or work product materials

The Court finds that Reyes possessed documentary materials within the meaning of Section 2000aa(b). *See Binion v. City of St. Paul*, 788 F. Supp. 2d 935, 948 (D. Minn. 2011) (noting that "subsection (b), which protects 'documentary materials,' does not contain" the "reasonably believed" element). Reyes credibly testified that he possessed his cameras and their content in connection with a purpose to disseminate them publicly on his YouTube channel. (Tr. 30:18–25).

Even if Reyes was required to prove that the arresting officers "reasonably believed" he was filming them to publish them, the Court finds Reyes has met that burden. Reyes informed the arresting officers that he was a journalist. When Reyes was arrested, he was wearing a press pass issued to him by The Challenger Street Newspaper. (Tr. 27:15–17). In one of the videos introduced at trial, Reyes can be heard telling the arresting officers "I'm a member of the press." (Pl.'s Ex. 9, at 13:50; Tr. 37:1–3). Alas testified that before he arrested Reyes on January 4, 2019, he knew who Reyes was, knew that Reyes videoed police interacting with citizens, knew about the Peaceful Streets Project, and knew Reyes's videos were likely published online. (Tr. 64:23–66:14). His police report confirmed he knew that Reyes was filming when he was arrested. (*See* Dkt. 79-8, at 7 ("Julian was in possession of a small camera which appeared he was utilizing.")).

The Court finds that the statements made by Reyes, combined with the police officers' knowledge of Reyes's status as a journalist, put the officers on reasonable notice that he was a

publisher protected by the PPA. *Binion*, 788 F. Supp. 2d at 948 (a reasonable jury could find evidence that plaintiff was "wearing press credentials and carrying a camera and videotapes" sufficient to put arresting officers on notice that she intended to disseminate videos to the public); *Basler v. Barron*, No. H-15-2254, 2017 WL 477573, at *12 (S.D. Tex. Feb. 6, 2017) (arresting officer who was "fully aware of web sites where civilians disseminate films of police activity to the public" means he "likely knew or had reason to know [arrestee] was filming him for the purpose of disseminating the film to the public").

### 3. Probable cause

The City argues that it had probable cause to arrest Reyes, raising the exception to liability under Section 2000aa(b)(1) for seizures where "there is probable cause to believe that the person possessing such materials has committed or is committing the criminal offense to which the materials relate." Reyes argues, and the Court finds, that this "suspect exception" is an affirmative defense on which the City bore the burden of pleading and proof under Federal Rule of Civil Procedure 8(c). *See Ingraham v. United States*, 808 F.2d 1075, 1079 (5th Cir. 1987) (statutory limitations on liability and statutory exemptions are affirmative defenses governed by Rule 8(c)); *see also Citicasters*, 89 F.3d at 1353 (identifying PPA's "suspect exception" as an affirmative defense); *Berglund v. City of Maplewood*, 173 F. Supp. 2d 935, 949 (D. Minn. 2001) (PPA's exception "applies to defeat Plaintiffs' claims"); *Madaie v. Roden*, No. CV-06-BD-0904-S, 2007 WL 9697592, at *3 (N.D. Ala. May 9, 2007) (placing burden on government defendant to "show that it could have established probable cause" to defeat PPA claim).

However, the City has not waived this affirmative defense. In his First Amended Complaint, Plaintiff alleges that the City violated the PPA when it seized Plaintiff's materials during arrests and "[t]here was no probable cause to believe that Reyes had committed a criminal offense to which the materials related . . . ." (Am. Compl., Dkt. 28, at 5). The City denies these allegations in its answer to

8

the First Amended Complaint. (Am. Answer, Dkt. 29, at 4). So, the City in its answer contended that its officers had probable cause to arrest Reyes, and this defense was not waived.

Even if the City had waived this defense by failing to deny the existence of probable cause in its Answer, the Court finds there was no unfair surprise or prejudice to Reyes. The Fifth Circuit has noted that "[c]entral to requiring the pleading of affirmative defenses is the prevention of unfair surprise." *Ingraham*, 808 F.2d at 1079. "Where the [affirmative defense] is raised in the trial court in a manner that does not result in unfair surprise, however, technical failure to comply precisely with Rule 8(c) is not fatal." *Lucas v. United States*, 807 F.2d 414, 417–18 (5th Cir. 1986) (quoting *Allied Chemical Corp. v. Mackay*, 695 F.2d 854, 855–56 (5th Cir. 1983)). The defendant does not waive an affirmative defense if "[h]e raised the issue at a pragmatically sufficient time, and [the plaintiff] was not prejudiced in its ability to respond." *Allied Chemical*, 695 F.2d at 856.

The issue of the suspect exception to the PPA was thoroughly addressed by the parties during summary judgment briefing. (Pl.'s Resp., Dkt. 47, at 27). This Court also discussed probable cause for the January 4, 2019, arrest and the applicability of the suspect exception in its order adopting in part and rejecting in part the report and recommendations of the United States Magistrate Judge. (Order, Dkt. 68, at 21). Additionally, the City discussed the suspect exception to the PPA and probable cause for all of Reyes's arrests, including the January 4, 2019, arrest, in its pretrial filings. (Dkt. 67-1, at 4–5, 13–14). The issue was brought up at trial, where Reyes presented evidence on the issue and questioned the City's witnesses on it. In short, Reyes had notice that the suspect exception would be an issue at trial and had a complete opportunity to address the exception and present evidence on probable cause at trial.

Having found that the City did not waive the suspect exception as an affirmative defense, the Court turns to the application of the suspect exception and will find that the City lacked

probable cause to arrest Reyes for interference with public duties. Reyes was arrested for interference with public duties under Texas Penal Code § 38.15, which provides, in relevant part:

> (a) A person commits an offense if the person with criminal negligence interrupts, disrupts, impedes, or otherwise interferes with . . .
>
> > (1) a peace officer while the peace officer is performing a duty or exercising authority imposed or granted by law . . .
>
> (d) It is a defense to prosecution under this section that the interruption, disruption, impediment, or interference alleged consisted of speech only.

Tex. Penal Code § 38.15. In order to violate this statute, "a person's interference must consist of more than speech alone." *Voss v. Goode*, 954 F.3d 234, 239 (5th Cir. 2020). "[M]erely arguing with police officers about the propriety of their conduct, including about whether they have the legal authority to conduct a search, falls within the speech exception of section 38.15." *Freeman v. Gore*, 483 F.3d 404, 414 (5th Cir. 2007); *see also Bailey v. Ramos*, 125 F.4th 667, 676 (5th Cir. 2025). The speech exception has been interpreted to allow some time during which a person can speak up during police activity before their speech constitutes interference of that police activity. For example, the Fifth Circuit has held that arguing with deputies about whether they had the right to search the arrestee's home, even though it delayed their efforts to locate a suspect, fell within the speech exception. *Freeman*, 483 F.3d at 408, 414. Likewise, the Austin Court of Appeals has held that arguing with officers, even though it delayed the execution of a search warrant, fell within the speech exception when the arrestee was not obstructing officers' way. *Carney v. State*, 31 S.W.3d 392, 398 (Tex. App.–Austin 2000, no pet.).

The evidence at trial shows that Reyes's alleged interference with public duties was through speech alone. As described above, for most of the several minutes Reyes was filming, Reyes was verbally complaining about the officers' conduct but not interfering. (*See* Pl.'s Ex. 10, at 7:05–14:40). It is not disputed that for most of the time Reyes interacted with the citizens and the APD on the

10

scene, the officers were still able to carry out their work. For a few minutes, Reyes verbally disputed Hale's actions. At one point during Reyes's exchange with Hale, Reyes was asked to move back from where he was videoing, and he did. (*Id.* at 11:44). After less than two more minutes, a second officer, Alas, approached Reyes with his ticketing notebook out. (*Id.* at 13:30). Over an interaction of about 40 seconds, Alas told Reyes to stand up, that he was interfering by "riling up" other citizens, and told him to go "over there." (*Id.* at 13:30–14:13). Based on this evidence, the Court finds that Alas had no probable cause to arrest Reyes for interference with public duties under Texas Penal Code § 38.15, because Reyes's conduct consisted of constitutionally protected speech only. Reyes was also not physically interfering at the time; did not incite others to unlawful conduct; and was not afforded time to comply with Alas's fast-issued directives.

Courts have concluded officers had no probable cause to arrest or reversed a conviction for interference in similar circumstances. Of note, those cases make clear to the Court that the pure-speech defense affords some period during which a person may argue with police verbally to some extent without committing the crime of interference. In *Carney*, the Austin Court of Appeals reversed the conviction of a defendant arrested for interference for public duties. 31 S.W.3d 392. There, officers appeared at the defendant's home with a search warrant and a warrant for his wife's arrest. *Id.* at 397. Although the defendant argued with officers and questioned the validity of their authority, the defendant ultimately told officers he would let them into his home and began leading them through his garage. *Id.* Impatient, officers arrested the defendant for interference. *Id.* at 398. Although the court acknowledged that the defendant argued and delayed officers' entry into the home, it reversed the conviction because there was no evidence that he physically prevented the officers' entry into the home and his speech alone was insufficient for conviction. *Id.* at 398. In *Freeman*, officers arrested a plaintiff after she argued with the officers who told her that they could search her home. 483 F.3d at 414. The Fifth Circuit held that the officers lacked probable cause to

11

arrest the plaintiff for interference with public duties as her conduct consisted of speech alone, noting that yelling and screaming is protected by the speech exception. *Id.* As in these cases, Reyes was disputing Alas's authority to issue citations and to order Reyes to move. Reyes's arguing at most delayed Alas from completing the citation he was writing for a matter of seconds. And like in both cases, there is no evidence that Reyes prevented Alas from performing an official duty because of his arguing (even if there was some minimal delay).

Cases in a different procedural posture also support the above analysis. In *Pulliam v. Fort Bend County*, the plaintiff was filming police conduct during a welfare check and an officer asked him to move across the street. No. 4:22-CV-04210, 2024 WL 4068767, at *2 (S.D. Tex. Sept. 5, 2024), *report and recommendation adopted* 2024 WL 4282088 (S.D. Tex. Sept. 24, 2024). The officer arrested the plaintiff after he argued with the officer instead of moving. *Id.* The district court denied granting summary judgment on qualified immunity because fact issues remained over the existence of probable cause, noting (1) that the plaintiff did not obstruct the officer from carrying out his job, (2) that the plaintiff did not instruct anyone else to obstruct the officer, and (3) that more information on the location of others at the scene was relevant to determine whether the order to move was necessary for security purposes. *Id.* at *11. Here, the Court finds as a factual matter that Reyes did not obstruct officers from carrying out their work and that Reyes did not instruct anyone else to obstruct. In addition, there is no evidence that Reyes's seated position was a security concern or that it hindered the officers' ability to move freely and carry out their duties. *See also Novak v. Sheets*, No. 6:05-CV-252, 2006 WL 8441114, at *8 (E.D. Tex. May 25, 2006) (denying summary judgment on qualified immunity because "[a]ll reasonable officials in the defendant's circumstances should have then known that the defendant's conduct in arresting [plaintiff] when she was merely 'mouthing off' did not constitute an actionable offense"). These cases also support the Court's conclusion that the existence of a speech-alone defense requires there is at least some window of time during which a

person verbally questioning, or arguing with, a police officer does not constitute interference, so long as the person does not physically interfere with an officers' duties, or absent other exigent circumstances.[2]

The City cites five cases in support of its claim there was probable cause to arrest Reyes. (Mot., Dkt. 76, at 4) (citing *Bailey*, 125 F.4th at 667; *Spillers v. Harris Cnty.*, 113 F.4th 573 (5th Cir. 2024); *Westfall v. Luna*, 903 F.3d 534, 544 (5th Cir. 2018); *Childers v. Iglesias*, 848 F.3d 412, 415 (5th Cir. 2017); *Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 657 (5th Cir. 2004). However, each case addressed whether the defendant officer was entitled to qualified immunity for an arrest, a different standard than probable cause. Officers enjoy qualified immunity even if they are wrong about the existence of probable cause, so long as they "reasonably but mistakenly conclude probable cause is present." *Bailey*, 125 F.4th at 677. In such cases, "[t]here must not even arguably be probable cause for the . . . arrest for the immunity to be lost," a burden the plaintiff must meet. *Id.* (internal quotation marks and citation omitted). The Fifth Circuit in *Bailey* was especially clear in noting this distinction. *Bailey*, 125 F.4th at 676–78 (discussing *Haggerty*, 391 F.3d at 657, and describing it as "[holding] that an officer mistakenly but reasonably believed that an action constituted interference with a public duty"). Here, by contrast, the City must prove that probable cause in fact existed, not just that its officers were reasonable in believing they had probable cause to arrest Reyes. The PPA is a separate waiver of sovereign immunity Congress created for the purpose of preventing journalists from

---

[2] The City also says that Reyes failed to comply with Alas's orders and suggests that this constitutes an independent reason for his arrest. (Dkt. 88, at 4). However, Alas testified that he arrested Reyes for interference rather than failure to comply with his orders, a fact that is confirmed by Reyes's arrest report. (*See* Dkt. 79-8; Tr. 97:1–7). The Court also finds as a factual matter that Alas did not give Reyes a meaningful opportunity to comply with his orders before arresting him. Rather, Alas arrested Reyes less than a minute after engaging him, despite not testifying that the investigation, or any exigent circumstances or danger, necessitated Reyes leaving the scene. (Tr. 88:8–11, Pl.'s Ex. 10, 13:58–14:40). It would negate the existence of the speech-alone defense if an arresting officer could tell someone to stop speaking and then almost immediately arrest them for non-compliance with an order, without more.

13

having their materials seized by the government without probable cause of a crime. As described above, Congress intended the PPA to provide protection beyond that afforded by the Fourth Amendment. *Guest*, 255 F.3d at 340. As such, this case arises in a different context than the qualified immunity cases the City cites.

In addition to addressing a different legal standard, each of the qualified immunity cases the City cited arose in a different factual circumstance. The qualified immunity cases do suggest that there are exceptions where certain speech would not fall under the speech-alone defense. For example, the qualified immunity cases show that probable cause for interference may be more easily found when someone interjects themselves into an active crime scene,[3] behaves in a way that exacerbates the danger of a situation,[4] or prevents an officer from questioning another person.[5] These cases also underscore that physical interference differs from speech alone, as described above.[6] Here, there is no indication that there was an active crime scene, a dangerous situation, physical interference with the officers' work, or any behavior preventing the officers from questioning the citizens on the scene. Rather, the record shows Reyes voiced his opposition and frustrations with one officer present for several minutes without issue and then had an exchange with a second officer for about forty seconds during which the officer appeared to treat his interference as a foregone conclusion. Even when considering the qualified immunity cases as

---

[3] In *Bailey*, officers told the arrestee that he was in an active crime scene and should therefore stand back, the situation was tense and dangerous because another person present was openly holding a gun, and the arrestee did not comply as quickly as others at the scene. *Bailey*, 125 F.4th at 678.
[4] In *Haggerty*, 391 F.3d at 656, there had been the report of a fight among students, the situation was "potentially explosive," and the plaintiff had stepped toward the officers after being told to step back. *Id.* at 656–57.
[5] In *Spiller*, 113 F.4th at 579, the plaintiff was near a single-vehicle accident on a dangerous, elevated expressway, prevented another person from answering the officers' questions, and refused to leave the highway when asked multiple times.
[6] In *Childers*, 848 F.3d at 415, an officer ordered the plaintiff to move his truck, which was blocking the entrance to the plaintiff's ranch and therefore physically impeding the officer's investigation, and the plaintiff failed to do so. *Id.* at 413. In *Westfall*, 903 F.3d at 544, the plaintiff did not follow the officers' instructions not to enter her house and put her hand on the doorknob to enter. *Id.* at 544.

informative to its PPA probable-cause analysis, the Court still concludes that Reyes's arrest lacked probable cause.[7]

Finally, the Court notes that the PPA requires not only probable cause, but probable cause *related* to the materials at issue, an additional element for the City to prove. *See Garcia v. Montgomery Cnty., Maryland*, 145 F. Supp. 3d 492, 524–25 (D. Md. 2015). Here, it is uncontested that the City did not take Reyes's cameras and videos because they "relate[d]" to any alleged criminal offense. (Tr. 69:23–25). The videos were not viewed or copied, and they were returned to him when he was released. (Tr. 37:13–38:1). APD did not treat his cameras or the videos they contained as evidence of a crime. (Tr. 69:9–22). Alas testified that the City did not consider "the camera or the film to be evidence of some crime that had occurred," but that the seizure was "incident to the fact that they seized his person." (Tr. 70:1–9). The Court therefore finds that the City did not believe, and had no probable cause to believe, that the seized videos related to a criminal offense Reyes committed. The

---

[7] In their Reply, (Dkt. 86, at 6), the City also discusses *Hall v. Trochessett*, 105 F.4th 335, 342 (5th Cir. 2024), and argues that the Fifth Circuit held that "the 'speech-only' defense is a defense to prosecution under Texas criminal law . . . which is of no consequence to the argument that probable cause is lacking" because "[a] defense that may be raised in future proceedings does not vitiate probable cause at the time of arrest." *Hall*, 105 F.4th at 342. It appears to the Court that this comment was dicta, rather than a holding, and is not binding precedent, since the Fifth Circuit's analysis did not turn on this statement. *Knight v. Kirby Offshore Marine Pac., L.L.C.*, 983 F.3d 172, 177 (5th Cir. 2020) ("A statement is dictum if it could have been deleted without seriously impairing the analytical foundations of the holding and[,] being peripheral, may not have received the full and careful consideration of the court that uttered it.") (internal citation omitted). Rather, that statement arose in a discussion finding the independent intermediary doctrine broke the causal link between the law enforcement officer's motives and the arrest in question. *Hall*, 105 F.4th at 342. The Fifth Circuit concluded that the "single, narrow exception" to that doctrine did not apply, meaning it was not "obvious that *no* reasonably competent officer would have concluded that a warrant should issue" in those factual circumstances. *Id.*

Nevertheless, on the question of whether the speech-alone defense can impact the existence of probable cause for an arrest, the Court notes that in *Bailey*, the Fifth Circuit said the opposite: that, in the context of evaluating probable cause for arresting someone for interference with public duties, "to constitute interference, the action must consist of more than speech alone." *Bailey*, 125 F.4th at 676; *see also Voss*, 954 F.3d at 239; *Freeman*, 483 F.3d at 414. *Bailey*, as well as *Voss* and *Freeman*, address the issue more squarely and the Court will follow them.

Court finds that Reyes was not a suspect of a crime to which the materials related. 42 U.S.C. § 2000aa(a)(1), (b)(1).[8]

## IV. CONCLUSION

Based on these findings of fact and conclusions of law, the Court finds that Reyes proved his Privacy Protection Act claim at trial.

For the same reasons, **IT IS ORDERED** that the City's Motion for Judgment as a Matter of Law, (Dkt. 76), is **DENIED**.

A final judgment will be entered separately.

**SIGNED** on June 6, 2025.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE

---

[8] Since the Court has held no probable cause existed for Reyes's arrest, the Court need not reach the issue briefed by the parties about whether the application of the statute violates Reyes's First Amendment rights.